(No. 5965. July 7, 1933.)

VERDA DOOLITTLE, Respondent, v. AMOS H. ECKERT, State Game Warden, and HARRY C. PARSONS, State Auditor, Appellants.

[24 Pac. (2d) 36.]

Attorney General, and Ariel L. Crowley, Assistant Attorney General, for Appellants.

Harry S. Kessler, for Respondent.

WERNETTE, J.—Respondent commenced this proceeding for the issuance of an alternative writ of mandate directed to the fish and game warden, the board of examiners and state auditor to require the warden to certify her claim against the state in the sum of $655.83, the board of examiners to pass upon and certify the same to the auditor and the auditor to draw his warrant against the fish and game fund in respondent's favor in that amount. An al-

ternative writ of mandate was issued, motions to quash were made and the writ, so far as it concerned the board of examiners, was quashed, but the motions of the warden and auditor were denied. These officials answered and the trial resulted in a judgment that the alternative writ be made peremptory. A peremptory writ was issued commanding the warden to approve and certify the claim to the auditor and commanding the auditor to issue to respondent a warrant for $655.83. From the judgment awarding the peremptory writ of mandate the warden and auditor have appealed.

April 16, 1931, respondent began work, as a stenographer, in the fish and game department and continued in that capacity until July 1st of that year. Thereafter and until April 15, 1932, she filled the position of chief clerk in the fish and game department. At the time she was so employed M. P. Bailey, who appointed her chief clerk, was fish and game warden. After her appointment to that position she received as salary the sum of $150 per month until March 1, 1932, and thereafter at the rate of $135 per month. The salary of chief clerk, at the time that position was held by respondent, was fixed by statute at $2,600 a year, and her purpose in commencing this proceeding was to recover the difference between what she had been paid and the amount of that salary for the time she was employed as chief clerk.

A pay-roll was filed each month with the state auditor showing the name of each employee of the department, the position held by such employee, the portion of the month employed, the rate of pay and the amount due, and was signed by the employee, as a receipt, as required by law. These pay-rolls showed respondent was chief clerk; that the rate of her pay was $1,800 a year, and that the amount due her for the month was $150, except that the pay-rolls for March and April, 1932, showed her pay to be at the rate of $135 a month, as above stated. Each pay-roll bore the following certificate, signed by M. P. Bailey as head of the department:

"I certify that the services charged for above were necessary in the public service; that they were actually rendered as charged; that the rate of pay of each person carried hereon has been fixed by proper authority, and that the account is correct and just."

These pay-rolls were signed by respondent and paid by the state by warrants issued by the auditor against the fish and game fund. Respondent's warrants were accepted by her and cashed. It is conceded that prior to the commencement of these proceedings respondent made and filed her claim, in due form, with the appellant game warden, for the balance of the amount claimed by her as salary, which claim he refused to approve.

Respondent testified she was told by Mr. Bailey that she was to receive $150 per month for her services as chief clerk and she replied she thought she ought to have the same salary as the former chief clerk had received for the same work; that she frequently contended her salary should be the same as that of her predecessor, but it does not appear she ever demanded that Mr. Bailey certify to the auditor that she was entitled to any other or further sum than shown on the pay-roll. After Warden Bailey resigned and appellant, Eckert, became his successor, and after respondent's employment as chief clerk had terminated, this proceeding was commenced.

A question presents itself as to whether the writ of mandate is available for the purposes for which it is here sought to be employed.

Idaho Code Annotated, sec. 13–302, provides, with respect to the writ of mandate:

"It may be issued . . . . to compel the performance of an act which the law especially enjoins as a duty resulting from an office . . . . "

In *Davies v. Board of County Commrs.*, 26 Ida. 450, 143 Pac. 945, this court said:

"A writ of mandate is for the purpose of compelling the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station."

See, also, *Brooks v. Edgington,* 40 Ida. 432, 233 Pac. 514; *Logan v. Carter,* 49 Ida. 393, 288 Pac. 424, and cases therein cited; *Aker v. Aker,* 51 Ida. 555, 8 Pac. (2d) 777.

In *Gray v. Mullins,* 15 Cal. App. 118, 113 Pac. 694, the court said:

"It is hardly necessary to repeat what we have many times said, that the writ of mandate is a prerogative writ, and, in order to entitle the petitioner to such writ, it must plainly appear that he is entitled to the relief demanded, and that it is the duty of the inferior board, tribunal, or person to perform the act which it is claimed such tribunal, board, or person refuses to perform."

In *Campbell v. Hunt,* 18 Ariz. 442, 162 Pac. 882, 884, the supreme court of Arizona said of the writ of mandate:

"It is rather an extraordinary and expeditious legal remedy, which proceeds in every cause upon the assumption that the applicant has an immediate and complete legal right to the thing demanded."

▆ The court takes judicial notice that Mr. Gallet, who was state auditor when this proceeding was commenced, no longer holds that office (sec. 16–101, Idaho Code Annotated, subd. 5). Harry C. Parsons became his successor and is now holding the office of state auditor. Since the case has been pending on appeal in this court Harry C. Parsons has been substituted, by order of this court, in the place of Mr. Gallet, on motion of respondent, pursuant to sec. 5–319, I. C. A., reading in part as follows:

" . . . . An action or proceeding brought by or against any public officer in his official capacity and which action or proceeding is pending at the time of his death, resignation, retirement or removal from office does not abate. The court on its own motion or on motion for substitution may substitute the successor in office and allow the action or proceeding to be continued against such successor."

There is, as to the auditor, both the question of the surviving of the action and substitution. As to the game warden there is no question as to substitution and only the question of the survival of this cause of action. These

factors being determined, there only remains the question of the act of the game warden approving, certifying, transferring and submitting to the auditor a pay-roll in the correct amount, as according to the record there is no question as to the appointment of the respondent as chief clerk, or as to her performance of the duties as such.

We have as a definite premise the legislative provision establishing the salary of the chief clerk in a definite amount. (Sec. 35–116, Idaho Code Annotated.) Any person holding that office had the right to demand and receive that amount, and the legislative declaration of the amount of the salary left nothing to the discretion of the game warden.

Idaho Code Annotated, sec. 35–116, provides that the employees of the fish and game department, including the chief clerk, "shall be paid from the fish and game fund upon their sworn statement, which accounts shall be approved by the fish and game warden." The duty of the warden to approve and certify the claims for salaries of employees in his department is fixed by sec. 65–2011, as follows:

"For all institutions or departments where the officers and employees are paid a fixed monthly salary, a voucher may be submitted in the form of a monthly payroll covering the compensation of such officers and employees. This payroll must be signed on the proper line by each person carried for pay thereon, which signature will serve as a receipt for pay for the month covered by the roll. A warrant will be mailed by the state auditor to each person carried on such rolls for the amount of his salary. The vouchers must contain a certificate from the head of the department or institution to the effect that the services were necessary in the public service, that they were actually rendered as charged, that the rate of pay of each individual carried thereon has been lawfully fixed by proper authority, and that the account is correct and just."

It was not the duty of the auditor to draw a warrant for the payment of a salary of an employee of the fish and

game department except the same be approved and certified by the warden.

Section 35-116, I. C. A., in part provides:

" .... Assistant chief deputies, chief clerk, superintendents, and assistant superintendents of hatcheries and such other clerks as may be employed shall be paid from the fish and game fund upon their sworn statement, which accounts *shall be approved by the state fish and game warden.* .... All bills for expenses shall be certified as to their correctness by the state fish and game warden, and approved by the state board of examiners. Provided, also, that no claims shall be allowed for mileage of deputy game wardens exceeding five hundred miles in any one month. Providing, however, that in the discretion of the state game warden, he may authorize such local deputy game wardens and for such months as he deems necessary such additional mileage as may be necessary for the proper handling of the work in such district, but in no case shall the total mileage for a local deputy game warden be in excess of six thousand miles for any calendar year." (Italics ours.)

The authorities are far from being in accord as to whether a suit against a public officer abates on his no longer being in office. An exhaustive note to the case of *Irwin v. Wright,* 258 U. S. 219, 42 Sup. Ct. 293, 66 L. ed. 573, decided by the United States supreme court, reviews many of the leading authorities giving a clear analysis of the line of demarcation. At page 574 (of 66 L. ed.) we find the following:

"There is a sharp conflict of authority especially in the state courts, as to whether a suit against a public officer abates on his death or retirement from office, although in many cases the conflict is, perhaps, more apparent than real. The actual conflict is as to the nature of the duty sought to be enforced. Some courts take the view that it is individual to the officer, and so a suit brought against him cannot be continued against his successor, at least, in the absence of a statute providing for a substitution of such successor as defendant. Other courts take the view that the

duty pertains to the office, and so continues irrespective of the incumbent. Cases that are governed by some particular statute are, of course, distinguishable. Where the suit is against a board or other body, the authorities are practically unanimous, even in those jurisdictions that hold to the individual duty view, that the suit does not abate on a change in personnel."

Prior to the amendment of Idaho Compiled Statutes, 1919, sec. 6652, now I. C. A., sec. 5-319, by which the portion of sec. 5-319 was added to the original section, our court in the cases of *Beachy v. Lamkin,* 1 Ida. 50, *Boise Kuna Irr. Dist. v. Hartson,* 48 Ida. 572, 285 Pac. 456, and *Payette County v. Baldridge,* 50 Ida. 310, 296 Pac. 194, specifically held that the action does abate, the officer no longer holds the office and the successor in office could not be substituted. The holdings of this court being in line with the decision of the supreme court of the United States in *United States ex rel. Lewis v. Boutwell,* 17 Wall. 604, 21 L. ed. 721, one of the leading cases generally followed and oftentimes cited by the line of authorities holding, in effect, that where there is no statute permitting substitution of the successor in office that the action abates and substitution is not permitted.

There is another line of decisions, however, that hold that the duty is not personal but pertains to the office, and that even without statute the action survives and substitution of the successor is permitted. In Nevada, without a statute, sec. 8561, Nevada Code, 1929, similar to sec. 5-319, I. C. A., before its amendment, it was held in *Stone v. Bell,* 35 Nev. 240, 129 Pac. 458, that substitution and survivor would be allowed, saying:

"Counsel contends that the proceeding abated upon the expiration of the term of office of the original respondent, and that it was improper to substitute his successor in office, and a number of cases are cited to support this view. The question is one of original impression in this court, and we see no good reason not to adopt the view that the successor in office in a case of this character may be substituted in place of the officer whose term has expired. Here an

official duty is sought to be enforced, one which continues until performed, regardless of who may, for the time being, be the incumbent of the office. To hold that a proceeding of this character abates, simply because there is a change in the person occupying the office, is to impose needless expense and delay upon a litigant seeking to enforce what he deems to be a legal right. If the successor in office sees fit to adopt the course of his predecessor in refusing to perform what is alleged to be an official duty, no good reason appears why a new proceeding should of necessity be instituted.''

Which case was followed in *State v. Bonnifield*, 37 Nev. 44, 138 Pac. 906, citing cases from Arizona, Colorado, New York, Pennsylvania and Wisconsin, and distinguishing *State v. Kerman*, 17 Nev. 380, 30 Pac. 1075.

In the case of *Nance v. People*, 25 Colo. 252, 54 Pac. 631, the court said:

''The action was commenced against the state treasurer officially, to compel him to perform an official act. It was not against the individual holding that office, or one against him personally, except as a means to work out the redress to which relator claimed he was entitled. His cause of action survived the change in the office of treasurer. Mulnix, at the time of the motion to substitute him as respondent, was the official against whom the action was pending. The official duties of his predecessor, except when legally excused, devolved upon him in the same capacity. If the peremptory writ issues in cases of this character, it must be directed to the officer in office at the time it is ordered. It was therefore proper to substitute him in his official capacity as the respondent in this case.''

In the case of *Raymer v. Trefry*, 239 Mass. 410, 132 N. E. 190, 191, the court uses the following language:

''This is a complaint under St. 1916, c. 269, s. 20, now G. L. c. 62, s. 47, for the abatement of an income tax. The person named in the complaint as defendant in his official capacity as commissioner of corporations and taxation retired from that office and has been succeeded by

another. The right sought to be enforced is in substance and effect against the commonwealth. In the event that the complainant prevails, no judgment or decree is made upon the ordinary form and no execution runs against the defendant. . . . . The duty and obligation thus created are quite irrespective of the particular incumbent of the office or commissioner of corporations and taxation. In case there is a change in the person holding that office during the pendency of the complaint, no amendment is necessary substituting his successor as defendant. *Knights v. Treasurer and Receiver General*, 236 Mass. 336, at page 339, 122 N. E. 637, where cases are collected. The complainant's motion for such amendment should be denied.''

Where the action is against a board or other body having a continuing existence, even where there is no statute providing for survivor and substitution, the decisions are practically unanimous that the action will not abate because of change in personnel. (*Leavenworth County Commrs. v. Sellew*, 99 U. S. 624, 25 L. ed. 333; *Murphy v. Utter*, 186 U. S. 95, 22 Sup. Ct. 776, 46 L. ed. 1070; *Marshall v. Dye*, 231 U. S. 250, 34 Sup. Ct. 99, 58 L. ed. 206; *Norwalk etc. Electric Light Co. v. Common Council*, 71 Conn. 381, 42 Atl. 82; *Town of Scott v. Artman*, 237 Ill. 394, 86 N. E. 595.

We fail to see the logic in holding *mandamus* may be against a board, that is, several individuals, and not against one, where there is just as much a continuation of office and public function to be performed. That is to say, the duties of the auditor are just as continuous as those of the board of examiners. The illogical attempted differentiation between a board and an individual is well illustrated by an analysis of *People v. Coleman*, 99 App. Div. 88, 91 N. Y. Supp. 432, where the court upheld an action against a board because two of the original members remained and only one new one came in. Suppose all three had gone out and three new ones in, the duty to perform or breach of the board would have been the same.

The court of civil appeals of the state of Texas in *Carpenter v. Kone,* 54 Tex. Civ. App. 264, 118 S. W. 203, refused substitution because there was no statute authorizing it, the observation in the opinion that, "if a successor in office may be substituted, he may be mulcted in costs for the fault of his predecessor without any delinquency of his own," would apply to a board as well as an individual, and also: "Besides, were a demand made upon him, he might discharge the duty and render the interposition of the court unnecessary," rather begs the question, because the continuance of the suit or action is a demand, and the successor of an office certainly takes the office charged with the knowledge of the official actions of his predecessor. If ministerial, he may and should perform what should have been done and end the matter; if discretionary, his discretion may not be controlled, only compelled, and if he exercises it rightly or wrongly, the *mandamus,* by that, is ended. The real distinction recognized in other cases is not whether it is an individual or a group, but whether the duty is of such a character that it may be enforced as an adjunct of the office.

In the case of *Richardson v. McChesney,* 218 U. S. 487, 31 Sup. Ct. 43, 54 L. ed. 1121, the supreme court of the United States held that at the expiration of the term of office of a state official the induction of his successor into office abated the suit, there being no statutory authority for the substitution of his successor, indicating that if there were statutory authority for substitution its decision would have been otherwise. To the same effect, *Pullman Co. v. Croom,* 231 U. S. 571, 34 Sup. Ct. 182, 58 L. ed. 375.

It seems that the supreme court of the United States sensed the inconvenience, needless expense and multiplicity of suits occasioned by reason of its holding in a long line of decisions, that there was no survivor and substitution could not be made without statutory enactment. Consequently in the case of *United States ex rel. Bernardin v. Butterworth,* 169 U. S. 600, 18 Sup. Ct. 441, 42 L. ed. 873, it recommended to Congress to enact the necessary legisla-

tion providing for survivor and substitution, and apparently, pursuant to such recommendation, Congress did pass an act, February 8, 1899 (chap. 121, 30 Stat. at L. 822; Comp. Stats., sec. 1594; 8 Fed. Stat. Ann., 2d ed., p. 953), under which successors of United States officers who have been sued may be substituted for them upon proper showing.

Our own court in the case of *Boise-Kuna Irr. Dist. v. Hartson, supra,* held that there could be no substitution in the absence of an enabling statute, but had this to say:

"In this connection it may not be improper for us to suggest and recommend that, in order to promote justice and obviate expense and delay in such cases and to cure such defect in the law, the legislature enact a law permitting a substitution of successors of state and county officers sued in the courts, for those who cease to be officers by retirement or death, upon a proper showing in proper cases."

No doubt, pursuant to said suggestion the legislature amended Idaho Compiled Statutes, 1919, sec. 6652 (now I. C. A., 5-319), by adding to the original section the provision as above quoted providing for survival and substitution.

Appellant, Parsons, complains that he has not had his day in court and should not be held to account for anything that his predecessor may or may not have done. In answer to that contention we refer to the language used by Justice Paine in *State v. Gates,* 22 Wis. 210:

"It seems the papers laying the foundation for this application were served on the predecessor in office of the respondent. It may be that in such cases, in proceedings to charge a party personally with contempt, some notice or request should be first served upon him, and that he ought not to be so charged upon the strength of the proceedings taken against his predecessor of which he may in fact have no knowledge. But so far as the advancement of the principal remedy is concerned it is to be regarded as a proceeding against the officer, and not against the individual; and where proper papers have been once served upon the officer any proceeding which they warrant may be taken

against his successor without commencing *de novo.* This rule is essential to the due administration of justice, which might otherwise be baffled by the regular changes in office, or defeated by resignations made for the very purpose of destroying proceedings already commenced.''

Prior to the time that appellant, Harry C. Parsons, state auditor, was substituted in place of E. G. Gallet, he, Mr. Parsons, was served with an order to show cause, and afforded an opportunity to state any reasons he had why he should not be substituted as a party to the action. He filed numerous written objections why substitution should not be made, all of which have been carefully considered, and to some we will make special reference. He objects to being substituted as a party, in that he will thereby be held responsible for the defaults of his predecessor in office failing to perform his official duties, therefore that section 5-319, Idaho Code Annotated, is a direct violation of the provisions of sec. 1, Amendment 14, of the Constitution of the United States, forbidding the making or enforcing of any law denying to any person the equal protection of the laws. There is no merit in such contention. As pointed out in the Wisconsin case, *supra,* this proceeding is regarded as a proceeding against the officer and not against the individual, which is in line with a great number of cases which hold that an action of this character survives, and substitution is permissible.

He also contends that no process has been served on him and if substitution is permitted he is made subject to the limitations of the evidence produced on behalf of M. P. Bailey, former state game warden, during whose term the alleged claim arose, and E. G. Gallet, former state auditor; that there are available to the present state auditor, Harry C. Parsons, defenses relating to the estoppel of respondent to claim further compensation, and to prior employment of the respondent by the said M. P. Bailey, and relating to a separate and distinct contract with the state of Idaho made between Governor C. Ben Ross and the respondent, Verda Doolittle. The answer to this objection is,

that he but steps in the shoes of his predecessor as an officer. His predecessor, as an officer, was served with process, thereby the officer holding the position of state auditor has had his day in court. As will be pointed out later in this opinion, estoppel will not lie as against respondent. And as to the contention that there was a separate contract between the state and respondent, all that needs be said is that no state official, except the legislature, had any right, authority or power to fix or determine the amount of the salary of respondent; that the same was definitely fixed by act of the legislature; that it is conceded that respondent was the chief clerk, performed her duties as such and has not been paid the full sum of such salary.

It is also contended by Mr. Parsons that respondent has a plain, speedy and adequate remedy at law, and therefore *mandamus* is not available, in that she has a cause of action at law against M. P. Bailey, former state game warden, and on his official bond. Our own court in the case of *Beem v. Davis,* 31 Ida. 730, 175 Pac. 959, has held otherwise, and his objection is not well taken. (See, also, 38 C. J. 561.)

The other written objections made by Parsons, as to why he should not be substituted as party, have been carefully considered and without commenting on each one separately, none of them give any good or valid reason why substitution should not be made.

The court in the case of *Smock v. Farmers' Union State Bank,* 22 Okl. 825, 98 Pac. 945, 949, defines a ministerial act as follows:

"A ministerial act is one which a public officer or agent is required to perform upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning the propriety or impropriety of the act to be performed."

In view of the record, there being no question of the appointment of respondent as chief clerk and full performance of her duties as such, the statute expressly fixing the amount

of her salary, there was nothing left for Bailey, the game warden, to do except perform the ministerial act of approving, certifying, transferring and submitting to the auditor a pay-roll in the correct amount. It was the legal duty of Bailey to approve respondent's claim in the full amount, and Mr. Gallet should have paid it. They having failed in their clear and well-defined duty, *mandamus* is the proper remedy because an action against the board of examiners in the supreme court for an advisory or recommendatory judgment is neither speedy nor adequate. This is so because its fruition depends on the action of the legislature, which might not act when it has already provided that the chief clerk should receive a fixed and definite amount. Respondent held the position of chief clerk, performed her duties and was entitled to the definite salary fixed by the legislature, it being the clear legal duty of the game warden to perform the ministerial act necessary, as outlined by the statute, in order that she could be paid by the state.

Appellants earnestly contend that by reason of the fact that respondent signed the pay-roll, in the nature of a receipt, and accepted and cashed the warrants delivered to her in a lesser amount than the sum provided by statute, she is now estopped from claiming the balance due her, and cite a number of cases tending to hold that way. We find, however, that the great weight of authority and the best reasoned cases do not support such contention. In the case of *Lukens v. Nye,* 156 Cal. 498, 105 Pac. 593, 20 Ann. Cas. 158, 36 L. R. A., N. S., 244, under somewhat analogous facts, the court said:

"This law is binding upon all the executive officers of the state. It expressly commands the Controller to draw warrants on the Treasurer for the sum appropriated . . . . These commands of the law are not to be questioned by any official or citizen, or controlled by the courts. Any agreement between the Governor and the beneficiaries to the effect that the Controller shall draw his warrants for a smaller sum in satisfaction of the whole amount must necessarily be futile and entirely void for any purpose. . . . .

"The scheme of legislation provided in the Constitution does not contemplate nor countenance such proceedings by the Governor as a mode of qualifying or affecting the operation of a law. If it were permitted, the Governor would practically have power to adjust claims against the state, a power not given to him by any law, and which the Constitution plainly vests exclusively in the Legislature. . . . . The appropriation bills enacted into law, instead of being as the Constitution intends, the final declaration of the people as to the disposition of the public funds, would be subject to the negotiations and bargains of the Governor with the beneficiaries, not manifested by any public record, and resting upon private agreements in writing, or in parol. . . . .

"The agreement in question being wholly void, and also against public policy, it cannot be the foundation for an estoppel."

The supreme court of the state of Washington in the case of *Rhodes v. City of Tacoma*, 97 Wash. 341, 166 Pac. 647, 649, had this to say:

"It seems equally well settled that any contract or agreement on the part of an incumbent of an office, made at the time of or before his appointment to the office, that he shall accept in lieu of the salary prescribed by law a sum less than is so prescribed is void as against public policy, and does not become binding upon him so as to preclude him from recovering the full amount of the salary. (Citing authorities.) So, even should it be considered that there was a contract or understanding between appellant and certain officers of the city, other than with the city council evidenced by ordinance, appellant would not be estopped from claiming the full amount of the salary prescribed by this ordinance."

In the case of *Phillips v. Graham County*, 17 Ariz. 208, 149 Pac. 755, 758, the court said:

"Stripped of all unnecessary verbiage, the defendant admits that plaintiff's salary was fixed by law at $2,000 per annum from August, 1912, to September, 1913, and at

$2,400 thence, that he faithfully performed the duties of his office at all times and that he is in no wise indebted to it, but it contends simply and because it paid plaintiff during those times at the rate of $1,500 per year, and he accepted it, a full acquittance of its obligation resulted. If this is law, then the board of supervisors may set aside the statutory salary and substitute another of their own fixing, by refusing to pay the salary fixed by law and thus forcing a settlement. The board can no more fix the salary in this manner than they can fix it by resolution or ordinance. The board has no power or authority to pay less or more than the legislature has provided as compensation to an official.''

See, also, *Settle v. Sterling*, 1 Ida. 259; *Wolf v. Humboldt County*, 36 Nev. 26, 131 Pac. 964, 45 L. R. A., N. S., 762; *Pitsch v. Continental etc. Nat. Bank*, 305 Ill. 265, 137 N. E. 198, 25 A. L. R. 164; *Bodenhofer v. Hogan*, 142 Iowa, 321, 120 N. W. 659, 134 Am. St. 418, 19 Ann. Cas. 1073; *Glavey v. United States*, 182 U. S. 595, 21 Sup. Ct. 891, 45 L. ed. 1247; *Lail v. Denver*, 88 Colo. 362, 297 Pac. 512; *Mack v. City of Mayfield*, 239 Ky. 420, 39 S. W. (2d) 679; *Bell v. Town of Mabton*, 165 Wash. 396, 5 Pac. (2d) 514.

We conclude, from what has been said as to the law and the record, that the duties imposed on the game warden and auditor, therewith, are of such a nature that the cause of action brought within the appropriate statutes of limitation, secs. 5–217, 5–218, 5–219 and 5–224, Idaho Code Annotated, survived as against the game warden and auditor, and that substitution was properly made as to the latter. But that no costs should be allowed against the auditor because he could not legally act until proper claim was presented to him, the only object or reason for joining him being to avoid a multiplicity of suits. Nor should costs be allowed as against Eckert, because, while he has not performed, the failure in the first place was that of Bailey, though the duty to act carries over to the succeeding official.

Judgment of the lower court is affirmed, without costs.

Givens and Holden, JJ., and Sutphen, D. J., concur.

MORGAN, J., Dissenting. — Idaho Code Annotated, sec. 35-116, provides that the employees of the fish and game department, including the chief clerk, "shall be paid from the fish and game fund *upon their sworn statement,* which accounts shall be approved by the state fish and game warden."

Monthly payrolls were submitted to Mr. Gallet, then state auditor, signed by respondent as a receipt for the amount of salary she claimed was due her. Mr. Bailey, then game warden, certified the rolls were correct; warrants were issued by Mr. Gallet, and were delivered to respondent, and accepted by her, in satisfaction of her claims. The duty to certify these payrolls devolved on Mr. Bailey, not on Mr. Eckert, the present game warden, and the code will be searched in vain for a provision making it Mr. Eckert's duty to correct errors, if any exist, in them, or to certify that respondent, who has not been chief clerk since he has been head of the department, is entitled to be paid more than her employer certified she was entitled to, more than she demanded for her services, and more than she received and receipted for.

The writ of *mandamus* may be issued "to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station." (Idaho Code Annotated, sec. 13-302.) Since the law does not impose the duty on appellant, Eckert, to correct the payrolls of his predecessor, nor to certify that salary is due to an employee for services rendered in the fish and game department when he was not connected with it, *mandamus* is not available to require him to do so.

It is contended respondent's salary, certified by Mr. Bailey, was less than that provided by statute and any agreement that she be paid less than the statutory amount was against public policy and void. The weight of authority sustains this contention, but it does not follow that *mandamus,* against Mr. Eckert, is the proper remedy. His duty with respect to payrolls is fixed by sec. 65-2011, quoted in the foregoing opinion. It is his duty to certify the monthly

payrolls as the salaries of employees in his department become due, if their claims are sworn to as required by law. When he has done this his duty with respect to payrolls has been discharged and nothing more can legally be required of him.

Applying to this situation the statement quoted in the foregoing opinion from *Campbell v. Hunt*, 18 Ariz. 442, 162 Pac. 882, with respect to the writ of *mandamus*, that: "It is rather an extraordinary and expeditious legal remedy, which proceeds in every case upon the assumption that the applicant has an immediate and complete legal right to the thing demanded," brings the answer that whatever remedy respondent may or may not have, *mandamus* against Mr. Eckert is not available. Nor is it available against Mr. Parsons, present state auditor.

Speaking of the writ of *mandamus*, it is said in 18 R. C. L. 89:

"It is regarded as a personal action against the respondent, instead of an action *in rem* directed against the office."

The supreme court of the United States, in *United States ex rel. Lewis v. Boutwell*, 17 Wall. 604, 21 L. ed. 721, said:

"The office of a writ of *mandamus* is to compel the performance of a duty resting upon the person to whom the writ is sent. That duty may have originated in one way or in another.

"It may, as is alleged in the present case, have arisen from the acceptance of an office which has imposed the duty upon its incumbent. But no matter out of what facts or relations the duty has grown, what the law regards and what it seeks to enforce by a writ of *mandamus*, is the personal obligation of the individual to whom it addresses the writ. If he be an officer, and the duty be an official one, still the writ is aimed exclusively against him as a person, and he only can be punished for disobedience. The writ does not reach the office. It cannot be directed to it. It is, therefore, in substance, a personal action, and it rests upon the averred and assumed fact that the defendant has neglected or refused to perform a personal duty, to the performance

of which by him the relator has a clear right.'' (See, also, *Knights v. Burrell*, 236 Mass. 336, 128 N. E. 637.)

In *Boise-Kuna Irr. Dist. v. Hartson*, 48 Ida. 572, 285 Pac. 456, cited in the majority opinion, this court said:

''It would be futile to issue the writ against Judge Hartson, formerly district judge, for the reason that he cannot be required to perform judicial duties unless he is a judge at the time when the duty is required to be performed. (*Bailey v. Baker*, 33 Cal. App. 452, 165 Pac. 543; *Leach v. Aitken*, 91 Cal. 484, 28 Pac. 777.) Nor could the successor in office of Judge Hartson be punished for contempt for refusing to obey a writ issued against Judge Hartson, his predecessor in office, and who had gone out of office when the writ issued, as such judgment against Judge Hartson would have no validity against his successor in office. (*Ex parte Truman*, 124 Cal. 387, 57 Pac. 223; *Sargent v. Cavis*, 36 Cal. 552.)''

Thereafter, the legislature amended Compiled Statutes, sec. 6652, now Idaho Code Annotated, sec. 5–319, by providing for substitution of the successor in an action or proceeding brought by or against any public officer in his official capacity which is pending at the time of his death, resignation, retirement or removal from office.

While this amendment would authorize the substitution of the present state auditor for Mr. Gallet in a proper case, it does not change the nature of a *mandamus* proceeding, which, as heretofore pointed out, is a remedy personal in its nature and available only against one whose legal duty to perform the act sought to be compelled is clear.

Furthermore, this is not an original proceeding in this court, but is here on appeal from the district court. Due process of law requires that a party litigant have his day in each and every court wherein the cause of action is litigated.

The claim of respondent was not sworn to as required by statute. This is, of course, a complete defense to the auditor in refusing to draw a warrant in payment of that claim, in whole or in part, for to do so would violate the law. That defense was not made in the district court by

Mr. Parsons' predecessor in office and cannot, of course, be made for the first time here. It is true a majority of this court offered Mr. Parsons an opportunity to set up any defense he had after the case was appealed and after it had been argued and submitted for decision. Such procedure finds no foundation in our code and is foreign to the principles of American jurisprudence.

In the foregoing opinion it is said:

''It is conceded that prior to the commencement of these proceedings respondent made and filed her claim, in due form, with the appellant game warden, for the balance of the amount claimed by her as salary, which claim he refused to approve.''

That concession is made in the brief filed by the former attorney general and his assistant, before Mr. Parsons became state auditor. Mr. Parsons never made such a concession, and has been forced into this case, over his objection, by a majority of the court, and denied the right to make a complete defense which was available to him. One of the payrolls on which respondent claimed her monthly salary is before us, and is not sworn to. It was stipulated, in effect, that the other payrolls in which her claims were incorporated are in the same form as the one introduced in evidence. It does not appear in the record that respondent ever presented a sworn statement of her claim for salary, in whole or in part, as required by sec. 35–116. Auditor Parsons cannot legally issue a warrant in payment of this claim, regardless of the concession made in the brief of the former attorney general and his assistant.

Not only has no demand ever been made by respondent on Mr. Parsons to issue a warrant for the payment of her claim, but, although it is alleged in the complaint that ''plaintiff has requested and made demands on the said defendants, and each of them, for the approval of said claim and for the issuance to plaintiff of a warrant for the amount due thereon, but that the requests and demands of said plaintiff have been, and will continue to be, denied . . . . ''; and although Mr. Gallet, in his answer, alleged:

"That no claim or demand for said additional sum of Six Hundred Fifty Five Dollars and Eighty three Cents ($655.83), or in any amount as a balance owing plaintiff for her services, has ever been filed with or presented to this defendant by or on behalf of plaintiff, or by said defendant Amos H. Eckert; nor has the claim of defendant referred to in the writ of this court been transmitted to this defendant,"

there is no evidence to be found in the record that a demand was ever made upon the state auditor to issue the warrant, the issuance of which is sought to be enforced by this writ.

In 38 C. J. 576, it is said:

"As a general rule the relator must have demanded performance of the act or duty which he seeks to enforce. . . . .

"This principle, it is believed, has never been questioned in so far as the duty is of a private nature affecting the right of the relator only; . . . .

The foregoing opinion bases the right to the writ of *mandamus*, in this case, on the fact that respondent is clearly entitled to receive from the state the money she seeks to recover. Jurisdiction to issue the writ of *mandamus* cannot be made to depend on the strength of the claim to the relief sought. Frequently, in cases of this kind, the right to the writ is challenged before an answer is filed. In this case, before answer, the defendants moved to quash the writ; the motion was denied, and the ruling is assigned as error. The court, being without jurisdiction to issue a writ of *mandamus* for the purpose of collecting a debt, did not acquire jurisdiction when it became apparent the debt was due.

The alternative writ of mandate was issued in this case before the facts were established which this court uses as a foundation upon which to base jurisdiction.

Particular attention is invited to the following part of the foregoing opinion:

"It was the legal duty of Bailey to approve respondent's claim in the full amount, and Mr. Gallet should have paid it. They having failed in their clear and well defined duty,

*mandamus* is the proper remedy because an action against the board of examiners in the Supreme Court for an advisory or recommendatory judgment is neither speedy nor adequate. This is so because its fruition depends on the action of the legislature, which might not act when it has already provided that the chief clerk should receive a fixed and definite amount.''

That statement is not only predicated on an unjustified assumption that the legislature, a co-ordinate branch of our government, would refuse to do its duty should a judgment of this court, recommending the payment of a debt found due from the state, be placed before it, but it holds inadequate a remedy which the Constitution recognizes to be adequate and has attempted to make exclusive for the litigation of claims against the state. However, it is hardly safe to assume the action would be against the board of examiners. Article 5, sec. 10, is as follows:

''The Supreme Court shall have original jurisdiction to hear claims against the state, but its decision shall be merely recommendatory; no process in the nature of execution shall issue thereon; they shall be reported to the next session of the legislature for its action.''

The holding to the effect that, because the legislature may not be depended on to do its duty, the remedy provided by the Constitution is inadequate is something this court will, probably, sometime repudiate, or explain, distinguish or otherwise apologize for.

No contention has been made that this claim has been barred by the statute of limitations and, therefore, the reference to secs. 5–217, 5–218, 5–219 and 5–224, I. C. A., in the foregoing opinion appears to be unnecessary.

Section 5–217 is our four year statute of limitations of actions, and relates to actions upon contract not founded upon an instrument of writing. Section 5–218 is our three year statute of limitations, relating to actions upon statutory liability, trespass, trover, replevin and fraud. Section 5–219 is our two year statute, and relates to actions against officers, for penalties, on bonds, and for personal injuries, and

sec. 5–224 relates to actions for relief not provided for in other sections of the statute, and limits the commencement of such actions to four years after the cause of action shall have accrued. Just how these sections could all have been made applicable to this cause of action, had they been pleaded as a defense, would be difficult to decide.