(No. 6855. October 10, 1941)

HENRY WRIGHT, Appellant, v. VILLAGE OF WILDER, a municipal corporation of the State of Idaho, Respondent.

(117 Pac. (2d) 1002)

Petition for Rehearing denied October 10, 1941.

Dunlap & Dunlap, for Appellant.

124

Scatterday & Scatterday and Ernest Anderson, for Respondent.

AILSHIE, J.—June 17, 1919, respondent, a municipal corporation, by its village chairman and board of trustees, passed Ordinance No. 5, "Fixing the duties and compensation of . . . . night watch, and other police as may be necessary." Sec. 13 of the ordinance provided as follows:

"The salary of the Night Watchman shall be Fifty (50) Cents per hour and all other Policemen and other assistance shall be Fifty (50) Cents per hour. The salary of the Night Watchman to be paid monthly."

Appellant moved to Wilder about May 15, 1937. He sought employment, and started to work, as night watchman August 16, 1937, worked until May 16, 1939, when his service terminated. He was instructed by the police chief to work between the hours of 8 p. m. and 5 a. m.; he was on duty every night. He presented his claim for and received a salary of $75.00 a month. He testified: "That is what they agreed to pay." In answer to questions, he testified that he agreed, at the time he accepted the position, to work for this amount; and he admitted

that *he then knew nothing about Ordinance No. 5.* In testifying as to why he didn't ask for additional money, during the time he was working, he replied: "I figured I wouldn't get it; . . . . I didn't know that I had any more coming to me." In computing the number of hours, he just multiplied the number of days by nine. The total hours for that time were 5670, for which he received $1575, being $75.00 per month; he sued for a balance of $1260.00.

The matter was tried before the court and jury and a verdict returned in plaintiff's favor for $300.00; judgment was entered for that amount, together with interest at six per cent. Motions for new trial and to vacate judgment, and for judgment notwithstanding the verdict, were all denied, from which orders and judgment plaintiff has appealed.

 Before passing to a consideration of the more vital issue urged, we are constrained to take notice of a rule of construction, generally recognized, to the effect that the various provisions of a contract or statute must be so construed (if possible) as to give force and effect to every part thereof. Applying that rule here, we might very well reconcile the provisions of the ordinance, fixing the wage of night watchman at *fifty cents per hour* with the contract of employment for salary of *$75.00 per month.* In effect, then, the two provisions, one in the ordinance and the other in the contract of employment, would amount to 150 hours employment during a month, making a monthly salary of $75.00.

It is conceded that the terms of the employment of appellant did not fix or specify the number of hours per day the watchman was to be on duty. It simply said $75.00 per month. It may have been a fact, as suggested by the testimony of one of the councilmen, that in this small country village there was but little for a night watchman to do; and that he could very well spend some of his time at the movie house, the pool room, restaurant, and elsewhere, thereby making his actual time on the streets much less than a full nine-hour shift, for which he now demands pay.

Appellant cites and relies on *Doolittle v. Eckert,* 53

Idaho 384, 24 Pac. (2d) 36, which holds that, where the statute fixes the salary, an officer or appointee, who takes employment with notice of the salary fixed by statute, can not change it by agreement or contract; and that the full amount prescribed by the statute may be recovered at the end of the term of service. That case, at first blush, appears to be in point here but a careful examination discloses that it rests on a somewhat different state of facts. There the officer, making the appointment, and the appointee both knew of the statute fixing the salary. The employee appears to have remonstrated from time to time, by way of urging that she was entitled to her pay in the full sum fixed by statute, and later prosecuted her action for balance due. Here, apparently, neither the officers making the employment, nor the officer employed, knew in fact of the existence of the ordinance fixing the salary at 50 cents per hour. The agreement was entered into, and appointee entered upon the discharge of his duties and performed them and presented his bill, from month to month, in accordance with the agreement between him and the village council.

The reason for not upholding an executory contract of this kind, obligating an officer or employee to accept a less salary or wage than that prescribed by the law-making body (legislative or municipal) is quite obvious. To do so might tend to slow down the performance and accomplishment of a public service or impair the efficiency of the employee. On the other hand, such condition could not result where the employee had no knowledge of a salary having been fixed by law at a greater sum than fixed by his employer; and he performs and completes the service before coming into possession of knowledge that he might have had more or better pay.

In the comparatively recent case of *Steele v. City of Chattanooga*, (Tenn.) 84 S. W. (2d) 590, 592, the supreme court of Tennessee, after stating the general rule that relates to executory contracts of this character, said:

"Conceding, but not deciding, that a sound public policy would forbid the enforcement of an executory contract of this nature, we are unable to see wherein any question of public policy is involved after the service has

been performed and reduced compensation paid and accepted without protest by the officer. *Second Nat. Bank v. Ferguson,* 114 Ky. 516, 71 S. W. 429; *De Boest v. Gambell,* 35 Or. 368, 58 P. 72, 353. In the latter case the court observed and applied a distinction between an executed and an executory contract to accept a reduction in salary.

"We are of opinion appellant should be repelled from a court of conscience in his attempt to gain an unconscionable advantage from an agreement to which he voluntarily assented for his own benefit and that the chancellor correctly held him estopped from recovering in this case."

*De Boest v. Gambell,* cited in the foregoing quotation, is a leading authority on this question and has been often cited.

Mr. McQuillian (recognized as the leading textwriter on Municipal Corporations, in vol. 2, (2d ed.) sec. 542, p. 330, of his work, says:

"An agreement by an officer, before appointment, to accept a less sum than that prescribed by law as a salary or compensation, has been said to be binding upon him. Moreover, the acceptance of a less sum, without objection, and in full satisfaction of services rendered, has often been said to estop an officer or employee from claiming more."

See, also, *Myers v. City of Calipatria,* (Cal.) 35 Pac. (2d) 377, at 378; *Chandler v. City of Elgin,* (Ore.) 278 Pac. 581, 582; *Boyle v. City of Ogden,* (Utah) 68 Pac. 153; *O'Hare v. Town of Park River,* (N. D.) 47 N. W. 380; *Werkman v. Westmoreland County,* (Pa.) 194 Atl. 346; *Raymond v. Christian,* (Cal.) 74 Pac. (2d) 536, 540.

It would be contrary to good morals and square dealing to permit one, who seeks and obtains public employment, under agreement for a specified wage or salary, to maintain an action for recovery of a greater sum, *after the service has been performed, the agreed wage or salary has been paid and the relation terminated.* Appellant is estopped to now assert a claim for greater compensation than already paid.

128

Judgment affirmed. Costs to respondent.

BUDGE, C.J., GIVENS and MORGAN, JJ., concur.

HOLDEN, J., (dissenting)—My dissent is based upon *Doolittle v. Eckert,* 53 Idaho 384, 24 P. (2d) 36.