497 P.2d 1039

Madeline WALTER, a single woman, Nelson Howard, a single man, Plaintiffs-Respondents,

v.

POTLATCH FORESTS, INC., a corporation, Defendant-Appellant.

No. 10868.

Supreme Court of Idaho.

May 22, 1972.

Rehearing Denied June 23, 1972.

Blake, Feeney & Mosman, Lewiston, for defendant-appellant.

Randall & Bengtson, Lewiston, for plaintiffs-respondents.

DONALDSON, Justice.

This action was instituted by Madeline Walter and Nelson Howard (plaintiffs-respondents) against Potlatch Forests, Inc. (defendant-appellant) to quiet title to more than four thousand acres of land in Nez Perce County (including the timber thereon), to enjoin the appellant from cutting any trees which were not of a certain minimum size when the timber was conveyed, and to recover damages for the removal of trees which were not conveyed to the appellant. In its answer, the appellant admitted that the respondents had title to the land, but asserted that the appellant had an interest in the timber thereon under certain timber deeds executed by the respondents or their predecessors in interest.

At trial, the dispute centered around the meaning of the words "all the timber of every kind, size and species," as used in the timber deeds mentioned above. Two

basic issues were presented to the trial court:

1. What is the meaning of the word "timber" in a conveyance of "all the timber of every kind, size and species situated, standing and being upon" a tract of land?

2. Does such a grant convey trees which have become and will become "timber" after the execution of the deed, or is the conveyance intended to afford only the right to cut trees which qualify as "timber" when the deed is executed?

The trial court, sitting without a jury, resolved these issues in favor of the landowners. In other words, the court decided that (1) "timber" means trees of a size suitable for manufacture into lumber for use in building and allied purposes; and (2) only those trees which are of this size *at the time of the grant* are transferred by a conveyance of "timber"—i. e., if a tree is below the minimum size at the date of execution but grows above the minimum size during the period allowed for cutting, this tree may not be cut. (One deed specifically included timber "hereafter growing," and the respondents concede that this deed gives Potlatch Forests the right to cut trees which were not "timber" at the time of the conveyance if they qualify as "timber" at the time of the cutting.)

During the trial below, the court admitted extrinsic evidence as bearing upon the meaning of the word "timber" and the intent with which the word was used, but in its memorandum opinion the court concluded that such evidence could not be considered and that the meaning of the word "timber" was laid to rest by the definition adopted in M. & I. Timber Co. v. Hope Silver-Lead Mines, Inc., 91 Idaho 638, 642, 428 P.2d 955, 959 (1967), wherein this Court stated:

"In the absence of modifying terms or expressions in the instrument or a construction peculiar to the locality, the general rule within the lumber industry is that the word 'timber' denotes trees of a size suitable for manufacture into lumber for use in building and allied pur-

poses. It does not, however, include saplings, brush, fruit trees or trees suitable only for firewood or decoration."

The appellant assigns as error the trial court's construction of one particular deed (plaintiffs' exhibit 8), although the court's findings relate to several deeds which employ the disputed language ("all the timber of every kind, size and species situated, standing and being upon").

Contending that the intended meaning can be determined from an examination of the deed itself and that there is no ambiguity in the language used therein, the appellant takes the position that the definition of "timber" adopted in the *M. & I. Timber* case should not have been applied to the case at bar. In essence, the appellant argues that "timber" is synonymous with "trees."

We hold that the phrase "all the timber of every kind, size and species" is ambiguous in the sense that the word "timber" may mean "trees" (as contended by the appellant) or it may mean "only trees suitable for manufacture into lumber" (as contended by the respondents); but we agree with the appellant that the trial court erred in ruling that the judicially defined meaning of the word "timber" was conclusively determinative in this case.

We do not doubt that a conveyance of "all the timber of every kind, size and species" conveys all the *timber* of every size, but this does not eliminate the necessity of determining the meaning of the word "timber." Although the words "of every size" modify the word "timber," before any significance can be attached to these words, it is necessary to determine the meaning of their antecedent. The need to look outside the instrument for the meaning of the word "timber" is obviated where that word is modified by terms or expressions which add certainty, as, for example, in descriptions such as "timber suitable for sawmills" or "timber 12 inches in diameter breast high." But the words "of every size" do not add certainty to the word "timber"; they do not make that term any

more definite or its intended meaning any more clear. That this is so can be seen by comparing the language used in the *M. & I. Timber* case with that used here; in that case, the deed in question conveyed "any and all timber," and this Court decided that the words "any and all" were not "modifying terms or expressions" within the meaning of the rule laid down in Arbogast v. Pilot Rock Lumber Co., 215 Or. 579, 336 P.2d 329, 72 A.L.R.2d 712 (1959):

> "In [the] absence of modifying terms or expressions in the instrument or a construction peculiar to the locality, the general rule within the lumber industry is that the word 'timber' denotes trees of a size suitable for manufacture into lumber for use in building and allied purposes." 336 P.2d at 332, 72 A.L.R.2d at 720.

In our view, the words "of every kind, size and species" are not "modifying terms or expressions"—within the meaning of the *Arbogast* rule—any more than were the words "any and all" used in the *M. & I. Timber* case; that is, the words "timber of every kind, size and species" are no more certain than the words "any and all timber." To look at it another way, if it is not clear that "any and all" timber means any and all *trees*, then it is not clear that timber "of every size" means *trees* of every size. We conclude that the the phrase "all the timber of every kind, size and species" is ambiguous.

 In determining the meaning of the word "timber" in an instrument of conveyance, the first step to be followed is to look to the instrument itself to ascertain whether sufficiently definitive modifying terms or expressions are employed in connection with the word "timber." Where, as in this case, the intended meaning is still unclear after scrutiny of the instrument itself, the next step is to consider extrinsic evidence, if any, which tends to show a construction peculiar to the locality or a particular meaning intended by the parties to the transaction. When the meaning of the word "timber" is still un-

certain after these two steps have been completed, then, and only then, is it necessary and proper to apply the judicial definition of the word. To summarize, the procedure to be followed is to examine (1) the instrument, (2) extrinsic evidence, and (3) the case law, in that order. As stated by the Oregon Supreme Court in the *Arbogast* case:

> "It is obvious that if the defendants were able to demonstrate that the legal meaning usually ascribed to the words 'timber' or 'all timber' is modified, limited or restricted in scope by evidence showing a different intention of the parties as derived from the circumstances surrounding the execution of the two deeds, or by evidence of local custom and usage prevailing at that time or by evidence of any practical construction placed upon the instrument by the parties initially interested therein, then the words referred to would assume a local cast and signification not consonant with the generally accepted legal meaning of the word 'timber' when not so circumscribed by events or incidents peculiar to a given transaction. Such results, if supported by the evidence defendants urge upon us, would obviate the need of inquiry into the meaning of these words as defined by judicial statement." 336 P.2d at 331, 72 A.L.R.2d at 719.

 In the case at bar, the trial court erred in failing to consider extrinsic evidence before applying the definition adopted in the *Arbogast* and *M. & I. Timber* cases. Although the extrinsic evidence presented at trial was conflicting, it was clearly sufficient to sustain a finding of fact that a meaning different from the judicial definition was intended by the parties to the deeds in question. It is not the function of this Court to make findings of fact. Sparkman v. Miller-Cahoon Co., 48 Idaho 254, 282 P. 273 (1929); *see, e. g.,* Brammer v. Brammer, 93 Idaho 671, 471 P.2d 58 (1971); Thompson v. Fairchild, 93 Idaho 584, 468 P.2d 316 (1970); Jones v. Big Lost River Irrigation Dist., 93 Idaho

227, 459 P.2d 1009 (1969). Ordinarily, in a situation such as that presented here, this Court would remand the cause to the trial court for further findings of fact and conclusions of law. Mecham v. Nelson, 92 Idaho 783, 451 P.2d 529 (1969); Liberty Mutual Insurance Co. v. Adams, 91 Idaho 151, 417 P.2d 417 (1966); Sparkman v. Miller-Cahoon Co., *supra*. In the case at bar, however, this Court takes judicial notice of the fact that former District Judge Paul W. Hyatt, who heard the evidence presented in the trial below, has since died. I.C. § 9–101, subd. 5; Doolittle v. Eckert, 53 Idaho 384, 24 P.2d 36 (1933). Because the judge who tried this matter is no longer available, we must remand the cause to the district court for a new trial. Kazal v. Kazal, 98 Ariz. 173, 402 P.2d 1001 (1965).

▇ In the *M. & I. Timber* case, this Court also considered the other substantial question raised during the trial of the case at bar: Does a conveyance of "timber" include "timber" which comes into being after the execution of the deed, or is such a transfer intended to afford only the right to take trees in existence as "timber" when the deed is executed? Since this issue must be resolved in order for this case to be finally determined, we must also pass upon the question here. I.C. § 1–205. Where there is no specific provision to the contrary in the instrument of conveyance, only "timber" in existence on the date of execution of the instrument is conveyed. M. & I. Timber Co. v. Hope Silver-Lead Mines, Inc., *supra,* 91 Idaho at 642, 428 P.2d at 959 (and authorities cited therein). In the case before us, the propriety of this construction is buttressed by the fact that the deeds in dispute do not contain the words "or hereafter growing," which were added to another deed from these grantors, drafted by the grantee's agent, which deed conveyed "all the timber of every kind, size or species situated, standing and being or *hereafter growing* upon" the described premises. This deed was executed in 1943, while those in dispute were executed in 1945, 1946, and 1948; since the words "or

hereafter growing" were not employed in these later instruments, the conveyance of "timber" which came into being after the execution of the deeds was presumably not intended. Furthermore, the deeds under review purport to convey only timber "situated, standing and being upon" certain lands. Hence, what this Court said in *M. & I. Timber* is applicable here:

> "That plaintiff cannot claim future growth is further shown by the fact that the conveyances * * * only purport to convey 'all that certain standing timber.' 'Standing timber' has been interpreted to mean 'timber *now* standing,' or in this case the timber standing at the time of the conveyance * * *." 91 Idaho at 643, 428 P.2d at 960.

Therefore, whatever the meaning of the word "timber" is finally determined to be in this case, the only trees conveyed by the deeds in question were those which qualified as "timber" when the respective deeds were executed.

The judgment is reversed and the cause remanded for a new trial. Costs to appellant.

McQUADE, C. J., McFADDEN, J., and COGSWELL, District Judge, concur.

SHEPARD, Justice (dissenting).

I deem it necessary to respectfully dissent from the majority opinion, not so much perhaps from the disposition of this particular case but because the majority opinion will, I believe, have an adverse and highly confusing effect upon the law of Idaho regarding conveyancing in the timber industry.

The majority fails to set forth amply the facts surrounding the execution of the deed in question herein. The evidence discloses that Ross and Marie Howard (both now deceased, Nelson Howard being their heir) and Madeline Walter began in the 1920's to acquire large land holdings for the purpose of conducting a livestock operation. In 1942 they became interested in acquiring additional holdings and gaining

better access to their ranch lands. They approached agents of the defendants proposing that the lands presently in controversy be purchased by themselves for their livestock operation, with Potlatch to provide the financing by way of purchasing the timber on the lands. Such a proposal would be beneficial to the plaintiffs since it would result in the lands being cleared as was necessary for grazing, and since access roads which were to be constructed for logging would also provide access to plaintiffs.

During the time of the negotiations Potlatch was engaged in a sustained yield logging operation in which the larger trees were to be removed to allow smaller trees to achieve faster maturity on a projected thirty year cycle. Agreements were entered into whereby the plaintiffs acquired the land and which culminated in the execution of the timber deeds at question herein. No representations were made by the agents of the defendant as to the amount of timber then existent upon the lands nor did defendant make any representations that they were interested in or would cut only trees of a minimum size or that were "merchantable." On the other hand the plaintiffs had sold timber from other lands and had specified in such sales that the only trees sold were to be "12″ dbh," i. e., a minimum diameter of 12″ diameter at breast height. In the instant matter, however, no such minimum size was specified but rather the parties contracted for the sale of all timber "of every kind, size and species."

The deed in question here was not of the "profit a prendre" type discussed in the M. & I. Timber case, which gave only a privilege of removing timber, but was rather a bargain and sale deed conveying title to the timber. Also granted were easements and other rights for removal of the timber for an indefinite period of time. Those additional rights were granted for a period of thirty years without payment and additional years upon certain payments.

The opinion of the majority holds that Potlatch is entitled to remove those trees which have reached a certain merchantable size and further restricts the removal of those trees which had reached that size at the time the contract was executed in 1942, some thirty years ago. I do not believe that such a result can in any way be squared with the language of the deed. Therein the reference was to "every size." The majority opinion suggests that Potlatch desires to equate the word "timber" with the word "trees." Such is not surprising since the plain meaning of the word "timber" is "growing trees or their wood." Webster's Third New International Dictionary. Cases are numerous holding that timber need not necessarily have the primary meaning of "trees" if modified by terms specifying minimum sizes or terms such as "merchantable" or "suitable for building" etc. That is not the situation in the case at hand. It appears to me that the clear meaning of the deed was that the parties intended to convey and receive title to all the trees then growing upon the tract of land regardless of size, kind or specie. Indeed that is precisely what the conveyance stated. The cases are legion holding that the plain meaning of a contract or deed is to be preferred and utilized over a strained or esoteric construction.

The majority opinion in raching its conclusion relies primarily on two cases: M. & I. Timber Co. and Arbogast. I believe that M. & I. Timber is clearly distinguishable from the case at bar. In that case the Idaho court specifically set forth that Nash had conveyed land to another party and reserved to himself "the right and privilege to remove any and all timber" from the lands conveyed. The court therein denominated such right as a "profit a prendre," defined such and stated:

"That language did not reserve to Nash the title to the timber but merely reserved to him a profit a prendre defined by the terms of the grant or reservation."

* * * * * *

"The owner of a profit a prendre, even in 'any and all' the timber on the land, does not possess the same rights he would have as owner of the timber, * * *."

* * * * * *

"Since the Nashes did not have *title* to the timber when they subsequently purported to convey the same, plaintiff and its successors in interest could not acquire good title thereto." (Emphasis added) 91 Idaho at 640–642, 428 P.2d at 959.

I suggest that the facts and the law announced in *M. & I. Timber Co.*, are a far cry from the instant case. The Idaho court in *M. & I. Timber* relied heavily upon the Oregon case of *Arbogast* also cited by the majority herein. I suggest that *Arbogast* is even more remote. In that case the Oregon court had for construction a deed stating that there was conveyed, "All of the Timber and Logs *now* standing, laying and being upon the following described tract of land * * *." The Oregon court said:

"Ordinarily, timber deeds have more specific descriptions of the timber conveyed than we find in the instant deeds as, for example, the descriptions are qualified by more definite terms, such as 'timber suitable for sawmill' or limited to timber of certain species, size and dimensions. But there is little in the instruments on review which is helpful in defining the language * * *."

The court went on to state:

"In absence of modifying terms or expressions in the instrument * * * the general rule within the *lumber industry* is that the word 'timber' denotes trees of a size suitable for manufacture into lumber * * *." (Emphasis added) 336 P.2d at 332.

The Oregon court also construed the intent of the parties to convey only that timber which had reached merchantability at the time of the execution of the conveyance.

The reasoning of that court in reaching that result is as follows:

"Any doubt that the parties intended to include only those trees classifiable as 'timber' at the time of the execution in 1924 is dispelled by a further examination of the granting clause. It reads, in part: * * 'hereby grant, bargain, sell and convey * * * *all* of the Timber and Logs *now* standing, laying and being.' " (Emphasis that of the Oregon court)

"The adverb 'now' is pivotal in that phrase, for it identified time. 'Now' denotes the present time or instant; here, it is October 6, 1924 * * *. The use of the word 'now' in the deeds indicates to us that it was the intention of these parties that only those trees constituting 'timber and logs' at the time of execution in 1924 were conveyed to defendants." 336 P.2d at 333.

It is apparent that the instant case is dissimilar to *Arbogast*. Here there are modifying terms, just as suggested by the Oregon court, indicating that all sizes and species were conveyed. The "pivotal" adverb "now" is not used in the conveyances before us and the lack of such term must be equally "pivotal" and connotes an intent to convey those trees which reach maturity after the execution of the deed.

In short, I believe that the majority errs when it states that the intent of the parties cannot be gained from within the four corners of the conveyance.

It follows therefore that I believe the majority errors in suggesting that extrinsic evidence is necessary to discern the intent of the parties. However, I disagree that, in any event, the case should be remanded for a new trial and consideration of extrinsic evidence. Even assuming that extrinsic evidence was necessary, that evidence has already been taken and is before this court on the record. I disagree that such evidence was conflicting. As herebefore stated the parties who conducted the negotiations on the part of the plaintiffs are deceased and were deceased before this matter came to trial. The negotiators for the defendant

testified at length and their testimony is before us. I can see no purpose for remand for a new trial since only the same testimony can be adduced. That testimony indicates to me that the parties intended to convey all the trees on the property regardless of what size they might be and that the defendant was entitled to remove any and all trees at whatever time it desired, conditioned only upon defendant complying with its duties as specified in the deed.

The question of what was or was not the construction or meaning of the word "timber" within the lumber industry is, I believe, completely irrelevant. As pointed out herein, this was not a dealing between two persons engaged in the lumber business. The plaintiffs were large property owners engaged in the livestock business who wished their lands to be cleared. Defendant, on the other hand, was engaged in a sustained yield timber growing and harvesting operation over long term growth cycles.