[Civ. No. 4810. Third Appellate District.—December 30, 1932.]

In the Matter of the Estate of WILLIAM P. BARNES, Deceased. CLAUDE M. BUTTS et al., as Executors, etc., Appellants, v. LYDIA A. RUSSELL et al., as Executors, etc., Respondents.

Bryce Swartfager for Appellants.

Gale & Gale for Respondents.

PLUMMER, J.—This cause is before us upon appeal by the above-named contestants from an order and decree of the trial court finding the property of the deceased to be separate property, and decreeing its distribution as such.

The record shows that William P. Barnes, deceased, and Emmarene Barnes, also deceased, intermarried on the twenty-seventh day of March, 1903, and lived together con-

tinuously as husband and wife until the death of William P. Barnes on the sixth day of November, 1928. On the twenty-fifth day of March, 1903, William P. Barnes and Emmarene Butts entered into a prenuptial agreement wherein it was agreed that William P. Barnes would make certain provisions in his will for the maintenance of the children of William P. Barnes by a former wife, and also for the maintenance of Emmarene Butts should she survive William P. Barnes, and that said Emmarene Butts would never claim any greater or other portion of the estate of the said William P. Barnes. Following the execution of this agreement the parties thereto, as stated, intermarried on the twenty-seventh day of March, 1903. Prior to, and on the twenty-seventh day of March, 1903, William P. Barnes, now deceased, owned the following separate property: A home ranch consisting of 83.46 acres; a certain other tract of land comprising 89.84 acres; likewise, a certain other tract of land situate in East Windsor, Sonoma County, comprising 40 acres; also an interest, in whole or in part, in some eleven lots of land, with buildings thereon, situate in the towns of Sebastopol and Santa Rosa. In addition to the foregoing real estate, the deceased, at the time of his marriage, also was the owner of notes, secured by real estate mortgages, of the face value of $16,125.

The record does not show the value of the 83.46 acres of land constituting the ''home ranch'', but it does show the estimated sum of money received from the sale of a number of tracts of land to which we have referred, in the sum of $41,042.80, which, added to the notes and mortgages, shows that of the separate property possessed by the deceased at the time of his marriage, there came into his possession cash and notes to the value of $57,167.80.

The record shows that during coverture the deceased made sale of nearly all of the separate tracts or lots of land owned by him at the time of his marriage, and received therefor the sum of money which we have just stated. During the period of coverture the deceased also borrowed various sums of money aggregating $4,650. The record also shows that between the date of the marriage of said deceased with Emmarene Butts, and the date of his death, the deceased acquired, either in whole or a divided interest in 17 tracts of land, for which he paid the aggregate sum of

$40,335. It also appears from the record that some of the buildings owned by the deceased in the town of Sebastopol were destroyed by fire and earthquake after his marriage, and the buildings thereon were restored. Some of the money used in restoring the buildings came from insurance and a portion thereof was borrowed funds.

On the part of the appellants it is contended that the property purchased after the twenty-seventh day of March, 1903, is presumptively community property. On the part of the respondents it is contended that the property acquired after marriage was only property acquired by the re-investment of funds which the deceased owned at the time of his marriage. It is shown by the record that the deceased engaged in no business, other than looking after his properties, collecting the rents, making improvements thereon, and farming, or having farmed the different tracts of land owned by him at the date of his marriage. There appears to be no direct evidence that the properties purchased during coverture really represented re-investments of the proceeds of the sale of separate property. But the record does show that the deceased had no other sources of income than the rents, issues and profits of the property owned by him at the date of marriage; that he was not engaged in any business except looking after and caring for the properties which he owned.

It is also contended by the respondents, and necessarily so found by the court, that the money borrowed by the deceased was borrowed on the faith and credit of the separate property owned by him, even though no mortgage was executed by the deceased to secure the repayment of any such sums. The figures in the record given as to the value of the different properties, and the sale value of the different properties show that the deceased received from the sale of his separate property a sum slightly in excess of the sums paid for the several tracts of property purchased by the deceased during coverture, which justifies the inference on the part of the trial court that the properties acquired during coverture simply represented re-investments of the proceeds of separate property. Several of the tracts of land purchased by the deceased were sold during coverture, but the selling price is not given. However, that is immaterial for the simple reason that if the purchase price represented a re-investment of separate property, the pro-

ceeds of the sale, even though in excess of the purchase price, would represent separate property coming under one of the three general terms found in the code, to wit: "rents, issues and profits". If the sale price was in excess of the purchase price, it would simply represent the profits derived from the investment.

As stated in 5 California Jurisprudence, page 294: "The fact that the separate property of either spouse, or the community property, is sold, and other property bought with the proceeds, or that such property is exchanged for other property, does not change the original character of the property. Its character is determined by reference to the nature of the fund with which it is purchased, and so long as its source can be traced, it retains the character of that source." Again, quoting from the text of the same volume, page 297: "In case of the confusion of an inconsiderable amount of community funds with a large amount of separate funds, the resulting fund will be separate property. The principle that controls the courts in following separate property through its various munitions, with what was originally separate property, together with the rents, issues and interest thereon, continues to be separate property."

Again, a portion of the text, quoting from the same volume, pages 298, 299, we think applicable here, to wit: "Where the commingling of the separate property with community property is such that it is impossible to trace the funds, the whole will be treated as community property, upon the principle that the burden is upon the spouse claiming property as separate property, to establish its character as such. But where the husband grows crops upon land which is his separate property, and it is impossible to determine what part of the value of the crops come from the land and what part from his exertions, the whole is treated as separate property, upon the principle that applies to improvements upon land."

The record here shows that the deceased received rents, issues and profits from the different tracts of land, other than city property owned by him at the date of his marriage, but the record is silent as to how much of the profits realized from such sources were due to the exertions of the deceased, and how much attributable only to the land. So far as we have been able to ascertain from the record the

trial court was justified in coming to the conclusion that the deceased did but little farming, but leased the different tracts of farming land owned by him during the entire period of coverture and collected rents therefor.

The facts of this case are very similar to the facts appearing in the case of the *Estate of Pepper*, 158 Cal. 619 [112 Pac. 62, 64, 31 L. R. A. (N. S.) 1092]. There the deceased was the owner of farming land; also the owner of a nursery; and it was held that the proceeds or profits of the farming land and the nursery constituted separate property. The deceased sold the land owned by him at the time of his marriage, and at the time of his death had a cash account in bank in the sum of over $50,000 and interest-bearing notes for some $57,000, and while, presumptively, the cash and notes would be community property, the evidence showing the only sources from which the deceased derived any moneys, it was held that the presumption was overcome, the language of the opinion upon this question being as follows: "While the respondents were unable to trace with exactness the transmutations of Pepper's acquisitions into the items of property which he left at his death, we think it can hardly be questioned that the record authorized an inference that his entire estate consisted of the proceeds of the sale of property owned by him at the time of his marriage, together with such profits and earnings as he had made in conducting his ranch. It was shown that he held the ranch before his marriage, and had been occupying it under a claim of ownership for many years. (Citing cases.) It was also shown that he had been engaged in no business other than that of conducting the ranch. In this testimony the court had a sufficient basis for the conclusion that whatever Pepper had at his death, over and above the property owned by him when he married, had been acquired in the business or occupation carried on by him on said ranch. . . . The appellant argues with great earnestness that the profits and earnings of such nursery business after marriage must, as a matter of law, be held to be community property. We think this position cannot be sustained." While the court goes on to state that the nursery required skill and industry and attention on the part of Pepper; that any agricultural enterprise requires the labor and skill of someone to insure success; that the resultant product is in part due to the proc-

esses of nature operating upon the land, and in part to the intelligent application of manual labor to the soil; that it is, in the nature of things, impossible to apportion the crop so as to determine what share of it has come from the soil and what share from the exertions of man. The product must be treated as a whole, and, if it is the growth on land separately owned, it is the separate property of the owner of the land.

In the case at bar the facts disclosed but little, if any, application of labor on the part of the deceased to the farming land owned by him as a part of his separate estate, but, on the contrary, that such lands were rented by him to others.

Appellants call our attention to the case of *Provost* v. *Provost,* 102 Cal. App. 775 [283 Pac. 842], where the question of improvements made upon separate property of one of the spouses, with community funds, is considered, and where it is held that if the husband deliberately takes community funds and makes improvements upon his separate property, that the wife is not deprived of her interest therein, and that such community interest may be appraised and determined. None of such facts, however, appears in this case. The record shows that the deceased owned, as we have stated, thousands of dollars worth of separate property at the date of his marriage; that the amount of money which went into the improvements of his separate property, other than that directly traceable to the proceeds of his separate property, was inconsiderable; that there was no wrongful or deliberate diversion of any community funds to the uses and purposes of the deceased, even if there were any community funds used by the defendant in making repairs upon the buildings partially destroyed by fire and earthquake.

The facts appearing in the case of the *Estate of Caswell,* 105 Cal. App. 475 [288 Pac. 102], relied upon by the appellant, are readily distinguishable from the facts of this case. In the Caswell case it appears that the appellant aided the deceased in his business by investing a considerable sum of her own separate property; that the business was carried on for a considerable period of time, and the money derived from the business was not simply rents, issues and profits of separate estates, as we have before us in the case at bar. We do not question the law to be as stated in the

opinion in the Caswell case, where it is said: "Where a husband or wife owns a business before marriage and continues to conduct it thereafter, the portion thereof attributable to the personal activity, ability and capacity of the person conducting the business will be regarded as community property. (Citing cases.) Earnings acquired by the industry and skill of either husband or wife are to be credited to the community."

The rule is also well settled that the claim of separate property must be established by clear and convincing testimony. But this is a question primarily for the trial court. We quote from the opinion in the recent case of *Simonton* v. *Los Angeles T. & S. Bank*, 205 Cal. 252 [270 Pac. 672], as follows: "The sufficiency of evidence to establish a given fact, where the law requires proof of the fact to be clear and convincing, is primarily, as in other cases, a question for the trial court to determine, and if there is substantial evidence to support the conclusion reached below, the finding is not open to review upon appeal." (Citing cases.)

The record shows that several lots and tracts of land owned by the deceased were conveyed to his heirs by deeds, and no question is raised as to the sufficiency of such conveyances.

Being of the opinion that the record shows sufficient evidence to justify the conclusion of the trial court that the estate involved in this action was the separate property of the deceased, it follows that the decree of the trial court should be affirmed. And it is so ordered.

Thompson (R. L.), J., and Pullen, P. J., concurred.