525 P.2d 314

Raymond G. SPEER, Plaintiff,

v.

Daniel A. QUINLAN, Judge of the Second Judicial District Court of the State of Idaho, IN AND FOR the COUNTY OF LEWIS, Defendant.

Raymond G. SPEER, Plaintiff-Appellant,

v.

Olive J. SPEER, Defendant-Respondent.
Nos. 11118, 11133.

Supreme Court of Idaho.

Oct. 23, 1973.

On Rehearing July 26, 1974.

120

William J. Dee, Grangeville, for plaintiff-appellant.

Michael E. McNichols, Orofino, Leo J. Driscoll, Winston, Cashatt, Repsold, McNichols, Connelly & Driscoll, Spokane, Wash., for defendant-respondent.

McQUADE, Justice.

Raymond G. Speer, appellant and petitioner for the writ of prohibition, and Olive J. Speer, respondent, were married in Seattle, Washington, in April, 1949. Four

children were born of the marriage: Gary, born September 24, 1951; Paul, born October 10, 1952; Neal, born November 21, 1953 (now married) and Lorraine, born July 5, 1957. Because of increasing marital difficulties, the parties separated in November, 1970. In January, 1971, Raymond Speer commenced an action against Mrs. Speer for divorce. She counter-claimed requesting a divorce and an equitable division of the parties' community property. After trial, which was held January 11–14, 1972, the district judge awarded Olive Speer a divorce on the ground of extreme mental cruelty. He also made findings in regard to community property, and, based on these findings, awarded Mrs. Speer a money judgment against Mr. Speer in the amount of $371,200 secured by an equitable lien on his stock in two closely held corporations—Speer, Inc., and Westec, Inc. Before Mrs. Speer could execute her judgment by a levy sale of the stock, Raymond obtained an alternative writ of prohibition from this Court which prevented the sale of the stock pending this appeal. This appeal is taken by Raymond Speer primarily from those portions of the judgment and findings of fact and conclusions of law which deal with the amount and division of community property. The hearing on the motion to quash the alternative writ of prohibition was consolidated with the presentation on the merits of this appeal.

At the time of the marriage Raymond Speer was working in the restaurant business at a salary of $350 to $400 per month. Mrs. Speer was employed as a billing clerk. In 1951, appellant began working in his father's ammunition manufacturing business, Speer Products, in Lewiston, Idaho. There is some conflict as to the circumstances under which appellant began his employment in Lewiston. The district court found that there was an understanding between appellant and his father, Vernon Speer, that if appellant did well he would eventually succeed to management of the business. Appellant argues that there was no such agreement.

At the time Raymond Speer began working at Speer Products, the company was an unincorporated proprietorship. Raymond began as a general laborer in the company, worked in several different capacities, and gradually increased his responsibilities and salary. Respondent contends that from 1954 Raymond shared management responsibilities with his father. The district court found that Raymond became a co-manager with his father in 1963. In that year, Vernon Speer decided to incorporate his business for estate planning purposes. Speer, Inc., was incorporated in June, 1963, and began functioning as a corporation on January 1, 1964. As part of the incorporation procedures, Vernon and Dorothy Speer (his wife) transferred all the equipment and assets of Speer Products Company, except the land and the buildings, to the new corporation. They have continued to lease the land and buildings to Speer, Inc.

The corporation initially issued 500 shares of $100 par value stock (which remain the total number of shares outstanding at the present time). The district court found that Vernon and Dorothy Speer received 498 of these shares and promissory notes in the amount of $49,520 in exchange for the assets of the proprietorship and that appellant subscribed to the other two shares. Appellant claims that Vernon and Dorothy received all 500 shares of stock.

It appears from the record that when the firm was incorporated, Raymond subscribed to two shares, but that such subscription was cancelled on December 31, 1963, and those shares were subsequently acquired by his parents who then owned all 500 shares. On that same day, Vernon and Dorothy Speer made gifts of most of the shares to Raymond and his sister, Virginia Luthy. Raymond received 320 shares and Virginia received 160 shares. Vernon Speer testified that their reason for giving Raymond twice as many shares as Virginia was that Raymond had been "active in the business" and Virginia had not. Forrest Luthy, Virginia's husband, received 10

shares and Mr. and Mrs. Speer, Sr., retained 10 shares. The latter 10 shares were divided equally between Raymond and Virginia in 1970 and 1971. Raymond now owns 325 shares or 65% of the total Speer, Inc. stock.

The original board of directors consisted of Vernon, Dorothy and Raymond. From 1966 until the present time, Vernon, Raymond, Virginia and Forrest Luthy have been the directors. As of December 31, 1963, the officers were Vernon, president; Dorothy, vice-president; Virginia, secretary and Raymond, treasurer. From 1966, until the present time, Raymond has been president; Vernon, vice-president; Virginia, secretary; and Forrest Luthy, treasurer. It was also in 1966, that Raymond began to be referred to in the minutes of the directors' meetings as general manager of the corporation. At the end of that same year Vernon officially withdrew from active management of the corporation and informed the Social Security Administration that he was working no more than twenty hours per month, which made him eligible for social security benefits. Appellant claims, however, that Vernon continues to participate actively in company affairs in his roles as officer, director, and landlord, as well as in the area of machine design.

From 1965–1971, the number of employees in the company increased from approximately thirty to approximately sixty. The district court found that the book value of the stock per share had increased from $100.00 to $818.43. The court further found that as of August 31, 1971, the market value of the corporation had increased from no more than $400,000 in January of 1964, to $1,560,000 at the time of the trial, a net increase of $1,160,000. These findings of the district court are disputed by the appellant, but appellant apparently does not deny that there has been substantial increase in both the value of the stock and the fair market value of the corporation. In all its years of incorporation, Speer, Inc. never declared any dividends on its stock nor issued any stock dividends.

During Raymond Speer's tenure as president of Speer, Inc., the company has expanded, introducing new products, increasing sales outlets, and hiring factory representatives to market the products nationwide. In addition, the corporation has developed new accounting and marketing techniques. By the time of trial, the company had accumulated undistributed after-tax earnings of $339,493. Raymond Speer devoted much time to his job, including some evening and weekend work. Olive Speer made some contributions to the conduct of the business by the entertaining of business guests.

During the period from October, 1964 to June, 1968, the corporation paid off the long term notes held by Vernon Speer in the amount of $49,520, at a rate of $3,000 per quarter. During this same period the base salaries of Raymond Speer and his brother-in-law, Forrest Luthy were reduced in the combined amount of $12,000 per year. Although Raymond received bonuses during this period, which augmented his total income, the district court found that the reduction of his salary during the period of the payout of the notes constituted a community contribution to the growth of Speer, Inc.

During this same period of the payout of the notes, Raymond Speer received regular cash gifts from his parents which amounted to approximately $24,000 according to the finding of the district court. These gifts together with community income were deposited in Raymond and Olive Speer's joint checking account in the Valley Commercial Bank. Out of this account, the parties paid for their living expenses. In addition, money from this account was expended in the acquisition of certain securities and an interest in an aircraft hangar. Title to certain of the securities was taken in the form of a joint tenancy between Raymond and Olive Speer. The district court concluded that community income and the separate property cash gifts had

been commingled beyond the possibility of tracing which money was expended for which purpose. Therefore, applying the presumption that all property acquired by spouses during the marriage is community property, the trial court determined that the securities and the interest in the hangar were community property.

Among the stocks acquired during this period are 3,000 shares of Westec, Inc., a close corporation which commenced the manufacture of pistol ammunition in 1969. Raymond Speer is president and 60% stockholder in that corporation. The district court apparently found all 3,000 shares of Westec stock (worth $3,000) to be community property although they were awarded to Raymond.

Central to this appeal are the findings of the trial judge to the effect that the enhancement in value of Raymond's stock in Speer, Inc. and of the corporation itself was predominately due to the community efforts of Raymond and Olive Speer. He cited the fact that Raymond had devoted his " * * * full attention, efforts, industry, skill [and] business acumen * * *" to the business. He also relied on the evidence of the decrease in Raymond's base salary during the period of the payout of the corporate notes and on certain credit transactions involving the corporation and the Raymond Speer community. He noted Olive's contributions as wife and mother and hostess to business clients. The district judge concluded that justice required him to disregard the corporate form and to award Olive Speer a share in the enhanced value of the corporation. Since Raymond Speer had owned 64% of the stock in Speer, Inc., during the greater part of the period from January, 1964, until the time of trial, the district court found the community interest in the enhanced value of the corporation amounted to 64% of the net increase in fair market value, or $742,400. The court awarded Mrs. Speer a money judgment of $371,200, representing one-half of this community interest. This judgment was secured by an equitable lien on Raymond's 325 shares in Speer, Inc., as well as his 3,000 shares in Westec, Inc. As noted earlier, she was prevented from executing the judgment when this Court issued an alternative writ of prohibition forbidding the sale of the stock, pending this appeal.

The Speer, Inc., stock itself was declared to be Raymond Speer's separate property. Other securities and property, including the Westec stock and the family home, which were either conceded by the parties, or found by the court, to be community property, were divided between Raymond and Olive Speer. The court ordered Raymond Speer to pay various debts found to be community obligations, including debts incurred by Mrs. Speer after the separation. The district court found no present need to make an award of alimony to Mrs. Speer, in light of her substantial money judgment. Finally, the court ordered Raymond to pay Mrs. Speer $150 support per month plus health expenses for their minor daughter and to pay support, college tuition, and health expenses for Gary and Paul, then nineteen and twenty years of age, until their twenty-first birthdays.

Appellant makes thirty-one assignments of error. His major contentions are: 1) that the court erred when it determined that the increase in the value of the stock and the corporation itself was due to the community efforts of Raymond and Olive Speer, including community guarantees of corporate indebtedness and salary cut-backs during payoff of corporate notes. 2) That the court erred when it "pierced the corporate veil" to determine who was responsible for the increase in the corporation's value and to award Mrs. Speer a share in such increase. 3) That the court erred in relying on the evidence of respondent's witness to determine the fair market value of Speer, Inc. 4) That the court erred in determining that separate property cash gifts from appellant's parents were commingled with community funds beyond the possibility of tracing, thus rendering the whole commingled fund and certain stocks

purchased therefrom community property. 5) That the court erred in ordering Raymond Speer to pay support money to Gary and Paul, who were at that time over the age of eighteen, but under twenty-one years of age. 6) That the court erred in imposing the equitable lien on appellant's stock and in making no practicable provision for the payment of the $371,200 judgment. We will deal with other miscellaneous assignments of error at the end of this opinion.

■ Before proceeding with a consideration of the major categories of alleged error, we must deal with an issue raised by respondent. Respondent contends that 160 of the 320 shares of stock in Speer, Inc. given to appellant by his parents were, in effect, remuneration for his work with the company prior to incorporation, and thus community property under I.C. § 32–906. She points to the testimony of Vernon Speer, to the effect that Raymond received twice as many shares of stock as his sister because he, Raymond, had been active in the business and his sister had not. In its memorandum opinion, the district court stated, "The Court finds that on December 31, 1963, the plaintiff husband received 320 shares of Speer Incorporated by gift from his parents." The pertinent parts of the findings of fact made by the trial court in regard to this issue read as follows:

"13. On December 31, 1963, plaintiff's parents, Mr. and Mrs. Vernon Speer, made a gift of 320 shares of their Speer, Inc. stock to plaintiff, Raymond Speer, and 160 shares of their Speer, Inc. stock to their only daughter, Mrs. Forrest Luthy. Raymond Speer was given the additional · 160 shares because he had worked in the business and the daughter had not * * *.

"14. The 320 shares of Speer, Inc. stock gifted to Raymond Speer December 31, 1963 represented 64% of the then issued and outstanding shares of Speer, Inc. In 1971 plaintiff Raymond Speer's parents made an additional gift of five (5) shares of Speer, Inc., bringing the total

amount of shares held by Raymond Speer to 325 shares, or 65% of the then outstanding shares * * *."

It is clear that the district court found the transfer of the 320 shares to Raymond Speer to be a true gift, rather than remuneration for services rendered. Such a finding is based on substantial and competent evidence and will not be disturbed on appeal. Indeed, with the exception of the statement by Vernon Speer at trial, alluded to by the district court in finding thirteen, *supra,* there is no evidence to support the respondent's contention that 160 shares out of the 320 transferred to Raymond Speer by his parents were remuneration rather than a gift. Plaintiff's exhibit 203 consists of a letter to Raymond Speer dated, December 31, 1963, advising Raymond Speer of his parents' intent to give him 320 shares of stock in Speer, Inc., and a letter to the corporation advising it, *inter alia,* that Vernon and Dorothy Speer had made a gift of the 320 shares to Raymond. Furthermore, the 320 shares of stock are included on Vernon and Dorothy Speer's 1963 federal gift tax return, which lists Raymond Speer as the donee of said stock. There was no evidence submitted that the transfer of 160 shares of stock to Raymond Speer was pursuant to any agreement which compelled the senior Speers to transfer the stock to Raymond in consideration for his services with the company. In light of the above, we cannot agree with the respondent's contention that one-half of the 320 shares of stock are community property.

The principal issue in this case is whether Mrs. Speer is entitled to share in the increase in value of Speer, Inc., a close corporation, in which her husband was a majority stockholder and important employee during part of their marriage, on the ground that such increase resulted from community efforts, industry and other contributions. The authority from the other community property states on the subject of the enhancement in value of separate property businesses is conflicting. No pat-

tern predominates even if the states are grouped according to the important criterion of whether they treat the rents and profits of separate property as separate or community property.

Texas and Louisiana generally consider the rents and profits of separate property to be community property as does Idaho. In Texas, the rule relating to the enhancement in value of separate property shares of corporate stock appears to be the following:

"[A]n original issue of corporate stock, which was separate property when issued to the husband, retains its separate character, no matter how much it increases in value as a result of surplus accumulated out of the earnings of the corporation. * * * And this is so, though the increased value is largely due to the efforts and activities of the husband as managing officer of the corporation." (Citations omitted.) [1]

This rule, which was enunciated by the Federal Court of Appeals, was followed in the Texas case of Johnson v. First National Bank of Fort Worth,[2] but not, however, in the case of Dillingham v. Dillingham,[3] where the court found that a corporation formed by a husband to manage his separate estate was in reality his "alter ego."

In Louisiana, the general rule on the enhancement in value of separate property during coverture is embodied in a statute:

"When the separate property of either the husband or the wife has been increased or improved during the marriage, the other spouse, or his or her heirs, shall be entitled to the reward of one half of the value of the increase or the ameliorations, if it be proved that the increase or ameliorations be the result of the common labor, expenses or industry; but there shall be no reward due, if it be proved that the increase is due only to the ordinary course of things, to the rise in the value of property, or to the chances of trade." [4]

In Beals v. Fontenot,[5] an early federal tax case applying Louisiana law, the court refused to consider any part of the enhancement in value of the separate property stock in a close corporation to be community property, even though the deceased owner-spouse had been president and general manager of the corporation for twenty-six years. Part of the rationale of the decision was that the community had been adequately compensated for the husband's efforts by salary and dividends throughout the marriage. However, *dictum* in the more recent Louisiana state court case of Abraham v. Abraham [6] suggests that were such a fact situation to arise in Louisiana in the future, the corporate form of ownership would not prevent the Louisiana court from finding a community interest in the enhanced value of corporate stock under some circumstances. "The legal status of the business has no relevancy whatever; the only inquiry is whether the value of the separate property of a spouse, *whether it be in the form of stock or otherwise,* has been enhanced by the labor or industry of the community." (Emphasis added).[7] In the *Abraham* case, the court found a community interest in the enhanced value of the wife's separate property interest in an unincorporated furniture store of which she had been general manager, credit manager, cashier and chief saleswoman during the marriage.

Turning to the states of Washington and California, where the rents and profits of separate property accrue to the separate estate of the owner-spouse, we find divergent approaches, in the theory at least, to the issue of enhancement in value of separate property businesses during coverture. In Washington, if the form of ownership

---

1. Scofield v. Weiss, 131 F.2d 631, 632 (5th Cir. 1942).

2. 306 S.W.2d 927, 929 (Tex.Civ.App.1957).

3. 434 S.W.2d 459 (Tex.Civ.App.1968).

4. La.Civ.Code, art. 2408 (West, 1961).

5. 111 F.2d 956 (5th Cir. 1940).

6. 230 La. 78, 87 So.2d 735 (1956).

7. *Id.*, at 739.

of a separate property business is that of corporate shares, the courts do not endeavor to determine the extent of community contributions to an enhancement in value of the business but instead limit themselves to an inquiry as to the adequacy of community compensation for its labor in the business.[8] However, the Washington court attempts to ascertain whether community efforts or extrinsic factors are predominately responsible for enhancement in value of separate property during coverture when the property in question is real estate or an unincorporated business.[9]

In California, where the rents and profits of separate property remain separate, two major formulas have evolved for determining whether, at the time of dissolution of a marriage, the marital community has acquired an interest in a separate property business in which the owner-spouse is employed. The rationale behind these formulas is that although the "natural" enhancement in value of separate property remains separate,

> "The time, efforts, and skill of the husband [and/or wife] are assets of the community and when they are used for the enrichment of the separate property of the husband, the community must be compensated. Where the husband expends time, effort, and skill in the affairs of a corporation in which he holds corporate stock as his separate property, there arises the question of apportionment of the resulting benefits reflected in any increase in the value of the stock * * * *."[10]

In theory, this reasoning applies with equal force in California to both incorporated and unincorporated separate property businesses which have enhanced in value during coverture, and to the apportionment of the rents and profits of separate property businesses in which the owner-spouse is actively engaged.

The first California formula which originated in the case of Pereira v. Pereira [11] allocated a reasonable rate of return to the husband's separate property investment and designated the rest of the increase as attributable to community efforts, and thus community property. The other approach, first applied in Van Camp v. Van Camp [12] ascertained the reasonable value of the husband's services to the business, designated that amount as community property (if it had not already been withdrawn in the form of salary) and allocated the remainder of the increase to the husband's separate property. The *Pereira* approach implies a decision that community efforts bear the predominate responsibility for the increase in value of the business. The *Van Camp* approach signals the court's determination that community efforts were not so essential to the growth of the business as to merit compensation beyond a just and reasonable salary.[13] In practice, the California courts appear to be reluctant to disregard the corporate form and apply the *Pereira* approach to cases involving the enhancement in value of separate property stock in close corporations to which the community has contributed labor.[14]

The overall impression we have derived of the state of the law in the other community property jurisdictions on the subject of the enhancement in value of separate property businesses during coverture is one of conflict and contradiction, sometimes resulting in ad hoc, arbitrary, or inconsistent decisions. We find especially unsatisfactory the artificial distinction

8. Hamlin v. Merlino, 44 Wash.2d 851, 272 P.2d 125 (1954).

9. *Id.*, at 129.

10. Strohm v. Strohm, 182 Cal.App.2d 53, 61, 5 Cal.Rptr. 884, 889 (1960).

11. 156 Cal. 1, 103 P. 488 (1909).

12. 53 Cal.App. 17, 199 P. 885 (1921).

13. *E. g.*, Logan v. Forster, 114 Cal.App.2d 587, 250 P.2d 730 (1953).

14. *See* Somps v. Somps, 250 Cal.App.2d 328, 58 Cal.Rptr. 304 (1967) ; Owens v. Owens, 219 Cal.App.2d 856, 33 Cal.Rptr. 599 (1963) ; Gilmore v. Gilmore, 45 Cal.2d 142, 287 P.2d 769 (1955) ; Harrold v. Harrold, 43 Cal.2d 77, 271 P.2d 489 (1954) ; Logan v. Forster, *supra* note 13.

made between a separate property business organized in the form of a close corporation and an unincorporated sole proprietorship or partnership.

Unlike Louisiana, Idaho does not have a statute specifically governing the enhancement in value of separate property. The two code sections which are most closely related to this problem are I.C. §§ 32–903 and 32–906. I.C. § 32–903 reads as follows:

> "*Separate property of husband and wife.* —All property of either the husband or the wife owned by him or her before marriage, and that acquired afterward by either by [sic] gift, bequest, devise or descent, or that which either he or she shall acquire with the proceeds of his or her separate property, by way of moneys or other property, shall remain his or her sole and separate property."

The pertinent part of I.C. § 32–906 reads as follows:

> "*Community property—Conveyances between spouses.*—All other property acquired after marriage by either husband or wife, *including the rents and profits of the separate property of the husband and wife,* is community property, unless by the instrument by which any such property is acquired by the wife it is provided that the rents and profits thereof be applied to her sole and separate use; in which case the management and disposal of such rents and profits belongs to the wife, and they are not liable for the debts of the husband. Rents and profits as used in this chapter shall mean income only. * * *" (Emphasis added).

In 1954 in the case of Gapsch v. Gapsch [15] this Court promulgated rules relating to enhancement in value of separate property. The pertinent parts of the *Gapsch* case follow:

> "As a general rule, the natural enhancement in value of separate property dur-

ing coverture does not constitute community property; however, to the extent an enhancement in value is due to community efforts, labor, industry or funds, it falls into the community. 41 C.J.S., Husband and Wife, § 479, b., p. 1015. Again, as a general rule, though not absolute, a so-called profit or gain from the sale of separate property occasioned by a natural enhancement in the value of such property, constitutes a part of the separate estate. 41 C.J.S., Husband and Wife, § 479, d., p. 1016. See also In re Barnes' Estate, 128 Cal.App. 489, 17 P.2d 1046; Hill v. Hill, 82 Cal.App.2d 682, 187 P.2d 28." [16]

In the *Gapsch* case, this rule was applied to the profit gained from the sale of a separate property automobile. The Court in *Gapsch* then applied the following rule to the use of community funds to increase the equity in the husband's separate property real estate:

> "As a general rule where the separate property of the husband is improved or his equity therein enhanced by community funds the community is entitled to be reimbursed from such separate estate unless such funds used for improvement or enhancement are intended as a gift. The claim for reimbursement has been held to be in the nature of a charge or an equitable lien against such separate property so improved or the equity of the husband therein enlarged. It would appear that the measure of the compensation generally is the increased value of the property due to the improvement; in instances where his equity therein has been increased through the application of community funds to the payment of the debt thereon the measure should be the amount by which such equity is enhanced." (Citing cases from California and Washington).[17]

In the instant case, we are dealing with the employment of one spouse in a sepa-

---

15. 76 Idaho 44, 277 P.2d 278 (1954).

16. 76 Idaho at 52, 277 P.2d at 282.

17. *Id.,* at 53, 277 P.2d, at 283.

rate property business in which he held an ownership interest and from which he received compensation in the form of salary, bonuses, and fringe benefits. Accordingly, we must ascertain the legislative intent regarding such a situation, keeping in mind the language of the statutes.

The community property system conceives of marriage as a cooperative enterprise in which assets acquired during the union are owned by both spouses in common. Besides tangible assets which a couple may acquire during a marriage, the marital community also possesses an important, though intangible, asset: the capability of both spouses to contribute to the material betterment of the community through their labor. It follows, therefore, that to the extent that either spouse is rewarded for his or her labor during the marriage, such reward is community property. Corollary to this doctrine is the assumption recognized by all the community property states that, broadly speaking, community effort which benefits the separate estate of one of the spouses should not go unrewarded. However, the community property statutes in Idaho do not contemplate that upon marriage the interests of each spouse in his or her separate property be assimilated by the community.[18]

■ Accordingly, if community efforts and ability have been expended in the conduct of a separate property business, a proper inquiry upon the dissolution of that marriage is whether the community has received fair and adequate compensation for its labor. Such a rule strikes a balance between the legitimate claims of both the separate and community estates.

■ In determining whether the community has been adequately compensated for its labor over the period of the marriage, the trial court should take the following factors into consideration: the nature of the business, the size of the business, the number of employees, the nature and extent of community involvement in the conduct of the business, the growth pattern of the business. (Did it steadily enhance in value? Did periods of prosperity alternate with periods of decline?) Once these questions are answered, the proper inquiry is whether the over-all compensation received by the community for its contribution to the conduct of the business was equivalent to the compensation which the business would have had to pay to secure a non-owner employee to perform the same services which were rendered by the community. A relevant type of evidence for determining the adequacy of community compensation for its efforts would be evidence relating to the salaries of non-owner employees at the same level of responsibility in comparable types of businesses in the same area of the country. If it is found that the community has been deprived of adequate compensation for its services, the community would be entitled to a judgment against the owner spouse equivalent to the difference between the income actually received by the community in the form of compensation from the business, and the income which the community would have received had the owner-spouse been justly compensated.

In the present case we look to the adequacy of compensation paid to Raymond Speer. We are dealing here only with the period of time subsequent to January 1, 1964, to the date of trial. Before January 1, 1964, Raymond Speer did not have an owner interest in the corporation. The only finding of fact made by the district court relative to the adequacy of Raymond Speer's salary, bonuses, and fringe benefits was that: "The value of community contributions of plaintiff and defendant to Speer, Inc. during the period of January 1, 1964 to date of trial greatly exceeded the value of the compensation paid by Speer, Inc. to the community during that period." The district court made no finding as to whether Raymond Speer's salary and other emoluments would have secured an equally able employee to fill his position. The

18. Malone v. Malone, 64 Idaho 252, 261, 130 P.2d 674 (1942).

only evidence as to how Raymond Speer's compensation compared with that of similar employees on an industry-wide basis was his father's statement that Raymond's pay was "above the norm."

■ A determination of whether Raymond Speer received compensation comparable to that of a similar employee in his position is needed for a final resolution of this case. Ordinarily, this Court would remand the cause for further findings of fact and conclusions of law on this issue. However, in the case before us, we take judicial notice of the fact that former District Judge Daniel A. Quinlan, who tried this matter, has since died. Because of this fact, we must remand the cause for a new trial [19] limited to this issue and to four other issues to be discussed *infra*.

In regard to the issue of Raymond Speer's compensation, we note that the salary cut-backs during the payoff of corporate notes do not, by themselves warrant a conclusion that community compensation was inadequate during that period of time. Instead the court should examine the overall amount of compensation to the community during those years, including bonuses and fringe benefits.

## RETENTION AND REINVESTMENT OF EARNED SURPLUS

By the time of the trial, Speer, Inc., had accumulated net after-tax earnings of $339,493, thus substantially increasing the "shareholders' equity" in the corporation. No cash dividends were ever distributed by the corporation, nor were any stock dividends issued. Raymond Speer testified that the $339,493 retained by Speer, Inc., was represented by "[v]arious assets such as [a]ccounts [r]eceivable, raw materials inventory, finished goods inventory, machinery, furniture and fixtures and the like." It is true, as respondent points out, that Raymond Speer's position as majority stockholder as well as president and general manager of Speer, Inc., gave him substantial influence over the decision to retain the net earnings or to disburse them in the form of cash dividends. However, no contention is made that retention of the net earnings was unreasonable from a business point of view or that the earnings were retained to defraud the Raymond Speer community.

■ Had part or all of the earned surplus been distributed by the corporation in the form of cash dividends, such dividends as were attributable to Raymond Speer's stock would have been community property under I.C. § 32–906, which provides that the rents and profits of separate property are community property. Presumably, the Speer community would have received 65% of the hypothetical dividend distribution, in proportion to Raymond Speer's ownership of 65% of the corporate stock. Because the net earnings were never disbursed by the corporation, they cannot be considered to be "income" or "rents and profits" as contemplated in I.C. § 32–906. Therefore, the retention of the earnings in the business does not present a case of community funds being invested in a separate property business. Nevertheless, the fact remains that, because of business exigencies, monies that might otherwise have been distributed to the community as cash dividends, instead remained in the business in which Raymond Speer holds a separate property ownership interest.

■ Discretionary division of community property pursuant to I.C. § 32–712 is one mechanism by which any inequities may be remedied. As part of its re-examination of the amount of community property to be divided between Mr. and Mrs. Speer, the district court should determine the extent to which the community would have been benefited, had 65% of the distributable earnings of the corporation been received by the community in the form of dividends. At least two factors must be taken into consideration in determining what proportion of the retained earnings would have been available for distribution in the form of cash dividends. First, on

---

19. Walter v. Potlatch Forests, Inc., 94 Idaho 738, 741, 497 P.2d 1039 (1972).

remand it is possible that the district court may determine that Raymond Speer was undercompensated for his labor in the corporation. To the extent that the district court finds that the Speer community was entitled to additional compensation for Raymond's labor, the amount of potentially distributable earnings here under consideration must be reduced. This is because any salary payments to Raymond Speer would have been deducted from the income of the corporation in the process of arriving at the figure for net earnings. The amount of retained net earnings under consideration should also be reduced to the extent that the salary of the other employee-stockholder, Forrest Luthy, was inadequate. Consideration should be given toward the maintenance of the corporate solvency.

Any attempt to compensate Mrs. Speer for detriment that the community may have experienced because of the retention of the earned surplus must, of necessity, be inexact. Nevertheless, such a procedure would be no more lacking in precision than awarding damages for pain and suffering, which has been accomplished satisfactorily by the courts for many years. Because of its decision regarding the distribution of property, the district court denied an award of alimony to Mrs. Speer. In view of this opinion, the district court on remand may reconsider the issue of alimony.

## COMMUNITY GUARANTEES OF CORPORATE CREDIT

In April, 1969, appellant and respondent delivered to the Bank of Idaho a "continuing guarantee" which purported to bind their community and separate property up to a liability limit of $200,000, as security for a line of credit extended by that bank to Speer, Inc. Virginia and Forrest Luthy signed a similar guarantee with a similar liability limit at that time. Formerly, Vernon and Dorothy Speer had been guarantors for the line of credit. On December 31, 1969, the Valley Commercial Bank of Clarkston, Washington, made a commercial loan of $15,000 to Speer, Inc., and a personal loan to Raymond Speer in the amount of $45,000. Raymond reloaned this sum to Speer, Inc. The community thereafter subordinated its $45,000 claim against Speer, Inc., to the claims of the Bank of Idaho against the corporation. The $45,000 loan was subsequently assumed by Speer, Inc., and apparently repaid in full. The district court designated these two transactions as contributions of the community to the growth of Speer, Inc. Appellant contends that the continuing guarantee was a mere formality, which was required because of his position with the company, rather than in reliance on community assets. He further notes that the guarantee had been in effect only a short time at the time of trial and that, in any event, the Luthys were equally bound and not merely the Raymond Speer community. In regard to the $45,000 loan he directs our attention to the Idaho case Shovlain v. Shovlain [20] for authority on the question of the classification of credit acquisitions during marriage. In *Shovlain,* this Court held that borrowed funds should be classified as separate or community property, depending on whether the separate or community estate "continues to be the primary source of future repayment." [21] We are asked to apply this reasoning to the $45,000 loan for which Speer, Inc. was allegedly the "primary source of future repayment."

We agree with appellant. The Speers and the Luthys divided the responsibility and in addition the guarantee was not in effect through the greater part of the time period we are considering. In regard to the $45,000 loan, it appears that a formal pledge of collateral by Mr. Speer was never executed. Apparently, the deposit by Raymond Speer of a certain stock certificate with the bank was primarily to secure other personal loans to Mr. Speer, rather than the $45,000 loan. The fact that the loan was a personal one to Mr. Speer appears to have been merely a de-

20. 78 Idaho 399, 305 P.2d 737 (1956).

21. *Id.,* at 403, 305 P.2d, at 739.

vice to avoid exceeding the legal limit in extending credit to Speer, Inc. Therefore, use by the corporation of the funds acquired in the two credit transactions did not create a community interest in the corporation.

## THE CHARACTER OF OTHER PROPERTY ACQUIRED DURING THE MARRIAGE

From 1964 through 1969, Raymond Speer received cash gifts from his parents which were deposited in the parties' joint checking account together with community income. The district court found that the cash gifts amounted to approximately $24,000. Appellant uses the figure $22,150. Funds from the joint account were used to pay for the parties' living expenses and for the purchase of certain securities and an interest in an airport hangar. The disputed securities are 3,000 shares of stock in Westec, Inc., five shares of common stock in the Valley Commercial Bank, ten shares of common stock of Addressograph, Inc., 1,985.968 shares of Investors Variable Payment Fund, 2,934.002 shares in Keystone Custodian Funds, two ownership certificates in Investors Syndicate of America, 100 shares of stock in Photon, Inc., and 100 shares of Diebold Tech Venture Corporation. The district court found that all of these securities and the interest in the airport hangar were community property. Some of these disputed shares, including all of the Valley Commercial Bank stock and some of the Investors and Keystone shares were acquired prior to the receipt of the separate property cash gifts. No evidence was presented to establish that these shares were acquired with separate funds and as to them, the general presumption that all property acquired during the marriage is community property [22] applies.

The district court relied on the doctrine that when community and separate funds are so commingled that tracing is impossible, all assets acquired with the commingled funds are community property. This is merely an application of the general presumption that all property acquired during marriage is community property.[23] The presumption places the burden of persuasion on the party asserting the separate character of the assets.[24] That party must prove that the property is separate with "reasonable certainty and particularity." [25] When direct tracing of which funds purchased which assets is impossible, this Court has allowed the party asserting the separate character of assets to employ indirect evidence in the form of accounting.[26]

In the case before us, the district court stated: "[T]he Court is unable to find that there were no community funds available with which to make such acquisitions as at the respective dates when the investments were made." We feel that a requirement of showing that community funds were exhausted at the date of purchase of each disputed asset, imposes too heavy a burden of record keeping on the average spouse.[27]

## OTHER ASSIGNMENTS OF ERROR

The district court ordered appellant to pay to his sons Gary M. Speer (now twenty-one) and Paul A. Speer (now twenty years old) each the sum of $150 per month for maintenance and support and further ordered that Mr. Speer pay the actual college tuition expense incurred by each until he had reached the age of twenty-one years. He also ordered Raymond Speer to pay the reasonable medical and dental expenses incurred by Gary and Paul until they should reach the age of twenty-one

22. Stahl v. Stahl, 91 Idaho 794, 430 P.2d 685 (1967) ; Rose v. Rose, 82 Idaho 395, 353 P.2d 1089 (1960) ; Gray v. Gray, 78 Idaho 439, 304 P.2d 650 (1956).

23. Stahl v. Stahl, *supra note* 22, 91 Idaho at 797, 430 P.2d 685.

24. Bell, Handbook of Evidence for the Idaho Lawyer, 235 (2d ed. 1972).

25. Evans v. Evans, 92 Idaho 911, 918, 453 P. 2d 560 (1969) ; Stahl v. Stahl, *supra note* 22, 91 Idaho at 797, 430 P.2d 685.

26. *See* Evans v. Evans, *supra note* 25.

27. *Id.*

years. Appellant contends that the enactment of S.L.1972, Ch. 117, § 1, p. 233, amending I.C. § 32–101 (codified at I.C. § 32–101 (Supp.1972)), which *inter alia*, lowered the age of majority for males to eighteen years, renders that portion of the decree invalid because at the time of the decree, both sons were over the age of eighteen years.

■ The decree of divorce ordering support payments for Gary and Paul was issued on May 3, 1972. At that time, Gary was twenty years old and Paul was nineteen; both were legally minors. The amended minority statute went into effect on July 1, 1972. On that date, Gary and Paul attained majority.

"[I]n the matter of providing maintenance for the children the power of the court ends upon their attaining their majority." [28]

Therefore, whereas the decree providing support for Gary and Paul was valid between the dates of May 3, 1972, and July 1, 1972, on the effective date of the new version of I.C. § 32–101, appellant was relieved of an enforceable duty to make further support payments to Gary and Paul.[29]

■ We see no reason to set aside the trial court's finding that the capacity of Olive Speer to hold fulltime employment is partially limited by allergy problems and her responsibilities to the minor daughter of the parties. It is the function of the district court to weigh the evidence and testimony of the parties.[30] When the findings of the trial court are supported, as here, by substantial and competent, though conflicting, evidence, they will not be disturbed on appeal.[31]

■ The trial court found certain debts to be community debts and ordered them to be paid by appellant Raymond Speer. These obligations include certain debts incurred by Olive Speer after the parties' separation. The appellant contends that the debts incurred by Mrs. Speer after the separation were submitted in an exhibit at the end of the trial without testimony, identification, justification, or proof. Respondent contends that appellant's counsel orally agreed that the exhibit be submitted to the court for such consideration as the district judge deemed proper, without formal proof. I.C. § 32–704 provides:

"While an action for divorce is pending, the court may, in its discretion, require the husband to pay as alimony any money necessary to enable the wife to support herself or her children, or to prosecute or defend the action."

According to the evidence presented by appellant, he paid to Mrs. Speer and the children $15,666.58 in such temporary support payments during the period from November 19, 1970 through December 31, 1971. This Court has ruled that in providing for temporary support during the pendency of a divorce action, the district court should take into consideration,

"the wealth and social standing of the parties, their manner of living, the present available means of the wife and the ability and income of her husband, her health and probable needs while the suit is pending, and many other circumstances. * * * Perhaps the most satisfactory rule is that the amount must be sufficient to enable the wife, in addition to her own means, to maintain herself during the suit according to her former manner of living." [32]

28. Piatt v. Piatt, 32 Idaho 407, 414, 184 P. 470, 473 (1919).

29. *Cf.* Crook v. Crook, 80 Ariz. 275, 296 P. 2d 951 (1956), in which the marriage of a minor daughter was held automatically to terminate support obligations imposed on her father by court decree.

30. Johnson v. Sweeney, 91 Idaho 805, 808, 430 P.2d 883 (1967).

31. Thompson v. Fairchild, 93 Idaho 584, 587, 468 P.2d 316 (1970).

32. Day v. Day, 15 Idaho 107, 116, 96 P. 431, 433 (1908). The relevant code section in effect at that time was Sec. 2472 Rev. Stat. The wording of this statute was identical to the present I.C. § 32–704.

On remand, the district court is instructed to re-examine the disputed expenditures in the light of this standard to determine the responsibility for discharging them.

In view of the foregoing, we reverse that part of the judgment and decree of divorce awarding Olive Speer a money judgment against Raymond Speer in the amount of $371,200. The case is remanded for a new trial limited to the following issues: 1) an evaluation of the adequacy of Raymond Speer's compensation, including bonuses and fringe benefits, during the period of his ownership of stock in Speer, Inc., 2) the extent to which the community would have benefited from the disbursement of "distributable" net earnings in the form of cash dividends; 3) the extent of the community interest in the disputed property purchased between 1964 and 1969; 4) the issue of responsibility for payment of the disputed debts; and 5) a reconsideration of the division of community property and the possibility of making an award of alimony, in light of the above.

Because of our decision in this case, the motion to quash the alternative writ of prohibition is denied and the writ is made permanent.

Reversed and remanded for further proceedings. No costs allowed.

DONALDSON, C. J., and BAKES, J., concur.

SHEPARD, Justice (concurring in part and dissenting in part).

I concur in that part of the majority opinion which reverses and remands that portion of the judgment and decree of divorce awarding the respondent wife the sum of $371,200. However, I disagree with that portion of the majority opinion which states:

"Community property statutes in Idaho do not contemplate that upon marriage the interests of each spouse in his or her separate property be assimilated by the community."

It is obvious that the mere fact of a marriage in and of itself does not change the interest of a person in his or her separate property. Nevertheless I believe that language of the majority could lead to the inference that in no case could the separate property of a spouse be completely assimilated by the community. In my judgment the law of Idaho is otherwise and is clear that under certain circumstances the separate property of a spouse can be completely assimilated by the community. Gapsch v. Gapsch, 76 Idaho 44, 277 P.2d 278 (1954).

I respectfully dissent from that portion of the majority opinion dealing with "community guarantees of corporate credit." As pointed out in the majority opinion the husband and wife obtained a bank loan of $45,000 by delivering to the bank a continuing guarantee binding their community and separate property to a liability limit of $200,000. Thereafter, the husband and wife loaned that sum to the corporation. The district court found this transaction to be a contribution by the community to the corporation. In my judgment such finding was correct. The majority opinion, inferentially at least, disagrees with said finding of the trial court and holds that the transactions did not create a community interest in the corporation. The majority opinion, however, does not appear to deal with said findings of the trial court in its remand, and I am at a loss to determine the significance of this court's overruling of the trial court's finding in this regard. The fact that the corporation at a later time evidently repaid the loan directly to the bank further confuses the already tangled financial affairs of this couple and the corporation.

I further dissent from that portion of the majority opinion denominated "the character of other property acquired during the marriage." It is undisputed that Raymond Speer received gifts of cash which were deposited in the parties' joint checking account together with community income. The district court found that the cash which constituted gifts and the cash which constituted community property

were so commingled that all of said funds were to be denominated community property. The district court found, in effect, that the husband had failed to carry his burden of proof by establishing with reasonable certainty and particularity that the disputed property was purchased with separate property assets. In my judgment the majority changes very substantially the burden of proof which has always been upon that person asserting separate property ownership. Rose v. Rose, 82 Idaho 395, 353 P.2d 1089 (1960); Clifford v. Lake, 33 Idaho 77, 190 P. 714 (1920); Humbird Lumber Co. v. Doran, 24 Idaho 507, 135 P. 66 (1913). If in retrospect it is now determined that sufficient evidence was not introduced to determine the character of the property, then in my judgment the husband failed to carry the burden of persuasion that the property was to be characterized as separate property.

I further believe the majority opinion ruling is based on the assumption that when separate and community funds were placed in one bank account, the separate funds were not intended and were not in fact expended for community expenses. I am not willing to make such an assumption and believe it contrary to common sense and the facts of life. My view is somewhat different and would indicate that at times what may be separate property of one of the spouses is often used for sending a child to college, making part of a down payment on real property, the payment of country club dues, or even such a mundane purchase as groceries. I would affirm the findings of the district court that the funds in the checking account were commingled and the property purchased therefrom is community property.

I further dissent from that portion of the majority opinion dealing with "certain debts incurred by Olive Speer after the parties' separation." It is clear in Idaho that debts incurred during the course of marriage, in the absence of court orders to the contrary, are community debts. In my judgment the amount of money paid by the husband to the wife for the support of the wife and children is completely irrelevant to the issue of whether or not such obligations are "community debts." The trial court had before it all of the evidence heretofore discussed regarding the financial affairs of the parties. The trial court also had before it the facts as related in the majority opinion pertaining to the sums paid by the husband to the wife during the period of separation. Being advised of, and taking all of the evidence into consideration, at least in theory, the trial court then ordered the husband to pay the disputed community debts. I would not overturn or question the trial court's exercise of its discretion.

McFADDEN, Justice (dissenting).

I generally concur with the dissenting opinion of SHEPARD, J., but I wish to express other conclusions I have reached concerning this appeal.

The majority opinion discusses at length the problem inherent in this case where there has been a marked increase in the value of the separate property of the appellant as evidenced by the shares of stock he holds in Speer, Inc. However, the majority opinion then concludes that "A determination of whether Raymond Speer received compensation comparable to that of a similar employee in his position is needed for a final resolution of this case." It is my conclusion that this is too narrow a basis to determine what interest the community had in the increase in value of the separate property of appellant.

The parties to this action were married in April, 1949, and this divorce proceeding commenced in January, 1971, after the parties had separated in November, 1970. For over twenty years these parties had continued their marital relationship, both of them devoting their efforts to the rearing of their children, maintaining their home, and striving to establish a successful marriage. During this period of time these parties prospered financially, and apparently without regard to whether their efforts increased the value of the separate property

of either or the community property of both.

The trial court specifically found:

"The increase in the earnings, accumulations and values of Speer, Inc., have been occasioned and caused substantially and materially by the various contributions of the community, including without limitation personal efforts continuously made by the plaintiff and defendant wife in behalf of said business and other contributions hereinabove enumerated. The increase in value of Speer, Inc., did not result from any marked increase in value of the physical assets of Speer, Inc., but from the increased sales and earnings of Speer, Inc., which are directly attributable to the community efforts of the parties. The defendant wife made a substantial contribution to her husband's efforts, and success in achieving such increases, acting as a constant and devoted wife and mother, and in making considerable effort in entertaining business clients and contacts."

Accepting this finding as binding on this court, it becomes evident that on remand the trial court must make its determination of the contribution by the community to the increased valuation of the appellant's separate property and thereupon compensate the community for this increase. See, Brockelbank, the Community Property Law of Idaho (1962) § 3.7.2, pp. 174 et seq. and Rule 3 mentioned therein; DeFuniak and Vaughn, Principles of Community Property, (2d ed. 1971), § 73, p. 168 et seq. See also, Gapsch v. Gapsch, 76 Idaho 44, 277 P.2d 278 (1954). In my opinion, evaluation of Raymond Speer's compensation in comparison with other employees would be doing a great injustice in not recognizing the actual contribution made by both parties of the community to the increase in valuation of the separate property.

ON PETITION FOR REHEARING

McQUADE, Justice.

The petition for rehearing in the above entitled action was granted and reargued. The Court has reviewed the record, con-sidered the arguments presented by counsel, and we continue to adhere to the views expressed and the conclusion reached in our earlier opinion.

■ The petition for rehearing revealed some confusion by the parties as to the means of determining on remand whether the community was adequately compensated for the labor of Raymond Speer. To determine if Raymond Speer had been adequately compensated for his services rendered to the corporation, the salaries of other business executives with similar responsibilities and skills located within the Pacific Northwest would be relevant evidence to be considered by the trial court. The trial court is not limited in its inquiry to other salaried wage earners. What it would cost to hire a person of Raymond Speer's capabilities is only one element for the trial court to consider in arriving at a determination of whether the community was adequately compensated.

No costs.

DONALDSON, and BAKES, JJ., concur.

SHEPARD, C. J., and McFADDEN, J., adhere to their views previously expressed.